HARRY EDELSTONE & another *vs.* HARRY SCHIMMEL.
SAME *vs.* SAME.

Suffolk.   January 6, 7, 1919. — May 20, 1919.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & CARROLL, JJ.

*Sale*, Delivery, Repudiation.  *Bill of Lading.  Contract*, Performance and breach.
    *Damages*, For breach by purchaser of contract of sale.

If, at the trial of an action in the Municipal Court of the City of Boston for the
    price of goods alleged to have been sold and delivered by the plaintiff to the
    defendant, it appears that a memorandum of the sale directed delivery of the
    goods to a carrier in Boston, freight to be paid by the defendant, and the plain-
    tiff so delivered them, addressed to the defendant as consignee, and received
    from the carrier a non-negotiable bill of lading naming the defendant as con-
    signee, which the plaintiff retained, giving no notice to the defendant respecting
    it; and if the bill of lading is not introduced in evidence and the testimony as
    to the ability of the defendant to procure the goods without it is conflicting and
    the judge makes no express finding respecting it and its effect on delivery to the
    defendant and finds for the plaintiff, it must be assumed, upon an appeal by
    the plaintiff from an order of the Appellate Division vacating the finding and
    ordering judgment for the defendant, that the mere failure of the plaintiff to
    forward the non-negotiable bill of lading to the defendant had no effect upon
    the defendant's right to demand delivery of the goods.
As a general rule, a non-negotiable contract of shipment is discharged by delivery
    of the goods to the consignee without the surrender or production of the bill of
    lading.
In the action above described, it was *held* that the general finding by the trial judge
    for the plaintiff imported a finding that the goods were delivered to the defend-
    ant, and that such a finding was warranted by the evidence.
The mere facts that, in the action above described, it also appeared that, after
    the plaintiff delivered the goods to the carrier, consigned to the defendant, he
    notified the carrier not to deliver them to the defendant and wrote to the de-
    fendant in an endeavor to get him to pay the purchase price before it was due,
    were *held* not to be of decisive consequence, and to be ineffectual to restore to
    the plaintiff title to the goods which had vested in the defendant upon delivery
    to the carrier.
Where, at the trial of an action for a breach of a contract of sale by a purchaser
    of goods sold by an oral contract of sale, it appears that, in the making of a
    sales slip by the vendor, which was handed to the purchaser, a clerical error
    occurred in stating the price too low, and that the purchaser seized upon such
    clerical error and persistently declared to the vendor that the slip as made ex-
    pressed the true terms of the contract, such conduct on his part may be found to
    constitute a repudiation of the contract.
Utter denial of an essential term of a contract may be found to be a disavowal of
    the contract.

In an action by a vendor of goods against a purchaser for damages resulting from a repudiation of the sale, it is proper to assess as damages the amount, if any, by which the contract price exceeds the market price of the goods at the time and place fixed by the contract for performance.

In the action described above it appeared that the contract of sale was made on a December 29, and delivery was to be at some time before January 8 following, and the plaintiff's evidence tended to show that there was no general market for the goods at the time and place agreed upon for delivery, but that, at about that time, the price had advanced so that the goods were from one quarter to three quarters of a cent per pound greater than the contract price. The evidence of the defendant tended to show that there was a market price for the goods at the time and place agreed upon for delivery, that that price never was greater than one cent less than the contract price and during the months preceding the time of the making of the contract varied from one and one half of a cent to one cent below the contract price. The judge found that at the time and place agreed upon for delivery the market value of the goods was sixty-five one hundredths of one cent less than the contract price. *Held,* that such a finding, while founded upon slight evidence, could not be said to be unwarranted.

Two ACTIONS OF CONTRACT, the first action being for $222.91, the purchase price of ten bales of oil mill motes alleged to have been sold and delivered to the defendant, and the second action being for damages due to a refusal of the defendant to carry out the terms of a sale to him of twenty-three thousand pounds of willowed picker, a quality of damaged cotton. Writs in the Municipal Court of the City of Boston dated March 6, 1917.

In the Municipal Court the cases were tried together.

The evidence in the second action on the question of damages was as follows: The plaintiffs testified that there was no general market price for the willowed picker, but that in early January, 1917, the price had advanced and the goods were worth from six to six and a half cents per pound. The defendant testified that there was a market price in the latter part of 1916 for willowed picker in the kind and quality purchased by him from the plaintiffs; that in the fall and winter of 1916 it was never over four and three quarters cents per pound, and that it fluctuated in the fall of 1916 between four and one half and four and three quarters cents per pound; and that in January, when the market was somewhat stronger the willowed picker was about four and three quarters cents per pound; that there were many grades of willowed picker, probably two dozen, of varying color and staple and mainly dependent upon the foreign substances in the picker; that the

market price of the picker in question had never been as high as five and three quarters cents per pound in the latter part of 1916. Two experts in the cotton waste business testified for the defendant that there was a recognized market price on willowed picker, that the willowed picker in question was never above five cents per pound the latter part of 1916, and that it fluctuated between four and one quarter cents and four and three quarters cents per pound. One of these testified that the price might vary in accordance with the needs of the buyer, and such variation might be three quarters to one cent per pound, depending also upon the grade of the particular lot. On the question of damages in the second action the judge ruled and found as follows: "The measure of damages is the difference between the market price at the time and place of delivery, and the contract price, which I fix at .0065 per pound. 23,000 times .0065 equals $149.50."

Other material evidence and certain findings of fact by the judge are described in the opinion. The judge found for the plaintiffs in both actions, in the first in the sum of $229.13, and in the second in the sum of $149.50, refusing certain requests of the defendant for rulings raising the questions described in the opinion; and at the request of the defendant reported both cases to the Appellate Division.

The Appellate Division made an order in the first action vacating the finding for the plaintiffs and ordering judgment for the defendant, and the plaintiffs appealed.

In the second action the Appellate Division ordered that the report be dismissed; and the defendant appealed.

*P. Rubenstein,* for the plaintiffs.

*L. R. Eyges,* (*S. B. Finkel* with him,) for the defendant.

RUGG, C. J. These are two actions of contracts based upon sales of goods. For convenience we treat each case separately.

### First Case.

This is an action to recover for goods sold and delivered. On December 29, 1916, the defendant at the plaintiffs' place of business in Boston made an agreement to buy of the plaintiffs "ten (10) bales of oil mill motes at 4¼ c. per pound, F. O. B. Boston, terms 1%, 10 net 30 days, to be shipped by the N. Y., N. H. &

H. R. R. — to be shipped at once to New York." There was no dispute between the parties as to the terms of this agreement. These goods were shipped to the defendant by the carrier named on December 30, 1916, and a non-negotiable bill of lading was issued on that date, the defendant being named as consignee. This bill of lading was not forwarded to the defendant, but was retained by the plaintiffs, who sent no notice to the defendant respecting it. Owing to other differences between the parties, the plaintiffs on January 11, 1917, and again four days later, wrote in substance to the defendant that they would not deliver to him the oil mill motes unless he accepted and paid demand or sight draft less one per cent discount. The plaintiffs also notified the carrier at Boston, on January 9, not to deliver the mill motes to the defendant. The defendant on January 11, 1917, brought an action in New York City for breach of contract and there attached goods of the plaintiffs alleged to be in the possession of the New York, New Haven, and Hartford Railroad.

The bill of lading is not printed in the record. The plaintiffs testified that the "defendant could get the goods on arrival without bill of lading." The defendant testified that without the "bill of lading, as matters stood, he could not get possession of the mill motes." The court refused to grant the defendant's sixth request for ruling, which amongst other matters contained a statement of fact to the effect that the defendant could not obtain the possession of the motes without the bill of lading. There was no other evidence and no express finding respecting the bill of lading and its effect on delivery to the defendant in New York. Under the circumstances it must be assumed that mere failure of the plaintiffs to forward it to the defendant had no effect on his right to demand delivery of the goods in New York. See, in this connection, *In Matter of Bills of Lading,* 14 I. C. C. Rep. 346, and *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206, 213, 217. It is the general rule that a non-negotiable contract of shipment by a common carrier is discharged by delivery to the consignee without the surrender or production of the bill of lading. The fact that one is consignee is evidence of ownership. *Brown* v. *Floersheim Mercantile Co.* 206 Mass. 373, 375. *Rosenbush* v. *Bernheimer,* 211 Mass. 146, 149, 151.

The contract between the parties was plain. The ordinary rule is that, in case of sales of goods to be shipped by the vendor from one place to another, delivery to the carrier is delivery to the buyer unless there is special agreement to the contrary. *Fechteler* v. *Whittemore*, 205 Mass. 6, 11. *Twitchell-Champlin Co.* v. *Radovsky*, 207 Mass. 72, 75. *Levy* v. *Radkay*, 233 Mass. 29, Sales act, St. 1908, c. 237, §§ 19 and 46. Delivery of the goods to the carrier together with the taking of a non-negotiable bill of lading in the name of the defendant was strong proof of intention by the plaintiffs to transfer the title to the defendant. *Wigton* v. *Bowley*, 130 Mass. 252. The general finding of the trial judge in favor of the plaintiffs imported a finding in their favor on the point of delivery.

The attempt of the plaintiffs by notice to the carrier not to deliver to the defendant was not of decisive consequence. The goods theretofore had been delivered to the carrier; it held as bailee for the defendant to whom the title had passed. The letters of the plaintiffs endeavoring to get the defendant to pay before the due date of the contract were ineffectual to restore to them a title which already had vested in the defendant. These subsequent acts of the plaintiffs had no effect upon substantial elements of the contract which were already executed. *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41, 48. *Daley* v. *People's Building, Loan & Savings Association,* 178 Mass. 13, 18. The finding of fact of the trial judge in favor of the plaintiffs was warranted by the evidence. No error of law is disclosed on the record.

The finding of the judge for the plaintiffs is to stand and judgment is to be entered accordingly.

*So ordered.*

### Second Case.

This is an action to recover damages for breach of a contract by the defendant to buy of the plaintiffs a car of willowed-picker at five and three quarters cents per pound. The negotiations were oral. When the bargain was struck, an unsigned memorandum dictated by one of the plaintiffs was written, in which the price was stated as four and three quarters cents per pound. The judge found on conflicting evidence that this was a mistake and that

the price agreed upon was five and three quarters cents per pound, that the defendant repudiated the sale, and that until such repudiation the plaintiffs were ready and willing to perform the contract, and that thereafter the plaintiffs resumed control of the property. The evidence disclosed by the record plainly warranted the finding that the terms of the agreement actually made were clear, that the defendant seized upon the clerical error in the sales slip or memorandum and persistently declared that that expressed the terms of the contract. His conduct in this connection constituted a repudiation of the only contract made. Utter denial of an essential term of a contract may be equivalent to a disavowal of the contract. Moreover, the defendant refused seasonably to give shipping instructions. *Mullaly* v. *Austin*, 97 Mass. 30. *King* v. *Faist*, 161 Mass. 449. *Kehlor Flour Mills Co.* v. *Linden*, 230 Mass. 119, 130.

The correct rule of law was followed in assessing damages. It was the difference between the contract price and the fair market price at the time and place fixed by the contract for performance. *Barrie* v. *Quinby*, 206 Mass. 259, 268. The evidence, while slight upon this point, cannot be pronounced insufficient to warrant the finding. *Houghton* v. *Furbush*, 185 Mass. 251. *Maynard* v. *Royal Worcester Corset Co.* 200 Mass. 1, 8.

*Order dismissing report affirmed.*