## UNITED STATES *v.* GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY.

No. 440.  Argued April 10, 1929.—Decided May 13, 1929.

*Assistant Attorney General Galloway*, with whom *Attorney General Mitchell* was on the brief, for the United States.

*Mr. Charles H. Bates*, with whom *Mr. Wm. R. Harr* was on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The Quartermaster Corps of the Army shipped on government bills of lading over the lines of respondent and connecting carriers a number of authorized private mounts of army officers ordered to change stations. Respondent was the last carrier and presented bills based on tariff rates applicable for the transportation of private property. The charges have been paid less $475.17, withheld by the Government on the ground that it is entitled to land grant deductions. This writ brings up for review a judgment of the Court of Claims for that amount.

The question for decision is whether the United States is entitled to land grant rates for the transportation of such mounts.

The United States concedes that it is liable for such transportation; but it insists that applicable statutory provisions and army regulations show that it has a property interest in the horses and the right to require the officers to use them in discharge of their duties; that they

are the property of the United States within the meaning of the land grant Acts, and that therefore it is entitled to the reduced rates.

Respondent was not aided by government land grant. Some of the carriers so aided are bound to transport "property or troops of the United States" for less than commercial rates.[1] By what is known as the equalization agreement, railroad carriers, including respondent and its connections, severally agreed with the Government to accept for transportation, where the Government is entitled to reduced rates on lines so aided, the lowest rates available as derived through deductions on account of land grants from the regular tariff rates.[2]

The authorized number of mounts for which maintenance is allowed to each officer is fixed by statute.[3] And that number is also authorized for the purpose of transportation. It is assumed, as stated in the briefs of the parties, that officers of and above the grade of major are required to furnish their own mounts. The Government will furnish mounts and equipment for officers below that rank; but, if any such officer provides mounts for himself, he is allowed additional pay.[4] When the cost of transportation exceeds the sum allowed in army regulations, the Secretary of War may permit the purchase of such horses by the Quartermaster.[5] And the Secretary may have the authorized mounts of an officer who dies in service transported at government expense from his last duty station to the home of his family; or such horses may be disposed of as directed by representa-

---

[1] § 3, Act of March 3, 1863, 12 Stat. 773. § 5, Act of July 25, 1866, 14 Stat. 240. And see § 11, Act of July 27, 1866, 14 Stat. 297.

[2] Appendix, No. 9 to Manual for Quartermaster Corps, 1916, Vol. II, pp. 223, 228–230.

[3] U. S. C., Tit. 10, § 801.

[4] U. S. C., Tit. 10 §§ 802, 803.

[5] U. S. C., Tit. 10, § 811.

tives of the deceased.[6]   The army regulations state that authorized mounts shall be transported at government expense "provided the horses are owned by the officer, are intended to be used by him at his new station, and are suitable mounts."

The right of the United States to have the concessions and allowances in respect of transportation made by the carriers in consideration of the aid given is a continuing one.   It is of great value to the Government and of course correspondingly burdensome to the carriers.   The terms of the obligation are to be sensibly and fairly read according to the words employed and not expanded or restricted by construction.   When considering another question arising under a like provision in a land grant Act, this Court said: "It might be very convenient for the government to have more rights than it has stipulated for; but we are on a question of construction, and on this question the *usus loquendi* is a far more valuable aid than the inquiry what might be desirable." *Lake Superior & Mississippi R. R. Co.* v. *United States,* 93 U. S. 442, 454.

In *Alabama Great Southern R. R.* v. *United States,* 49 C. Cls. 522, it was held that when not actually in the service of the United States the men in the national guard of a State transported upon proper government requisition for participation by authority of the Secretary of War in the encampment, maneuvers and field instruction of a part of the regular army, are not "troops of the United States."   And see *United States* v. *Union Pacific R. R. Co.,* 249 U. S. 354.   In *Oregon-Washington R. R. & Nav. Co.* v. *United States,* 58 C. Cls. 645, the court held that the effects, household goods, etc., and authorized mounts of army officers on change of stations are not government property within the purview of such Acts.

---

[6] U. S. C., Tit. 10, § 810.

And in *Oregon-Washington R. R. Co. v. United States,* 255 U. S. 339, 345, this Court held that the personal baggage of an officer is not property of the United States entitled to transportation at land grant rates.

We are of opinion that the principle of these decisions is controlling here. The United States demands service from its army officers which requires the use of things furnished by them. But it does not own and, as between it and them, it does not claim to own, hold or have any property rights in the uniforms, manuals, clothes, private mounts or other things by them furnished and used in the service. It would be unreasonable to hold valid the Government's claim of ownership asserted merely to secure land grant rates for the transportation of such mounts. The construction contended for is without support and cannot be sustained.

*Judgment affirmed*