### HENRY H. CROSS CO. v. UNITED STATES et al.

#### No. 8076.

Circuit Court of Appeals, Seventh Circuit.

Feb. 3, 1943.

184

Roger D. Doten, George M. Weichelt, Louis L. Dent, and John P. Hampton, all of Chicago, Ill., for appellant.

Francis M. Shea, Asst. Atty. Gen., of Washington, D. C., for appellee United States.

Vernon W. Foster, Charles A. Helsell, and Joseph H. Wright, all of Chicago, Ill., for intervener-appellee.

Before SPARKS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This suit was instituted against the United States, to recover an unpaid balance of $2,546.70, alleged to be due for fuel oil sold to the government for use at the Veterans Hospital at Hines, Illinois. In reality, the balance is the amount which plaintiff alleges was improperly deducted by the government, as freight charges, from the contract price of fuel oil furnished by plaintiff and shipped from Robinson, Illinois via the Illinois Central Railroad Company to Broadview, Illinois (Vet. Admin., Government Siding). The amount properly deducted by the government depends upon whether land grant or commercial freight rates were applicable. The Illinois Central Railroad Company intervened, and although it had been paid by the government its charges on a land grant basis, alleged that it was entitled to be compensated on the basis of commercial rates; in other words, that it had been underpaid to the extent of the difference between land grant and commercial rates.

The government answered plaintiff's complaint, and a trial was had before the court, in which the three parties participated. The court found that the land grant rates were not applicable, that the difference between freight charges computed on the basis of land grant rates and commercial rates was the sum of $2,174.57, which the Illinois Central was entitled to recover, and that the government had deducted the sum of $372.13 in excess of commercial rates, which amount the plaintiff was entitled to recover. Accordingly, the judgment appealed from was entered April 28, 1942. The government is not a party to this appeal; hence, the controversy here is solely between the plaintiff and the Illinois Central. While numerous contested issues are stated, the basic question is what was the correct freight charge. If land grant rates were applicable, plaintiff was entitled to recover the amount sued for, but if commercial rates were applicable, intervener was entitled to recover the difference between such rates.

In December, 1935, plaintiff and the government entered into a written contract whereby plaintiff agreed to furnish fuel oil for certain government facilities, including the Veterans Hospital at Hines, Illinois, during the period January 1 to March 31, 1936. Item 9 of the contract (the only one pertinent to this suit) provided that plaintiff would ship fuel oil to the Veterans Administration, for delivery F. O. B. Broadview, Illinois, at a price of $1.1025 per barrel from a delivery point within the Chicago switching district. During the early weeks of the contract, plaintiff supplied the oil as agreed from a refinery at Lemont, Illinois. About the middle of January, 1936, plaintiff reported to the Supply Officer at Hines that it was no longer able to supply oil from Lemont. Consequently, an arrangement was made between one Stenstrom, representing the plaintiff, and one Simmons, the Supply Officer at Hines, by which plaintiff agreed to furnish oil which was available at Robinson, Illinois. This was done until March 5, 1936, when plaintiff resumed shipments from Lemont. In accordance with the agreement between Stenstrom and Simmons, the oil was shipped from Robinson via Illinois Central Railroad on govern-

ment bills of lading, which were filled in and furnished by the government, except as to the date, car number, weight and gallons. The amount in controversy relates solely to the shipments from Robinson.

■ Inasmuch as the controversy revolves primarily around the correct freight rate which intervener was entitled to charge on shipments from Robinson to Broadview, Illinois, it appears pertinent to refer to the statutory provision which authorizes the transportation of government property at land grant rates. Section 4, Act Sept. 20, 1850, 9 U.S.Stat.L. 467, applicable to the Illinois Central, so far as now pertinent provides: "And the said railroad and branches shall be and remain a public highway, for the use of the government of the United States, free from toll or other charge upon the transportation of any property or troops of the United States." [1]

It is the theory of the plaintiff that title to the oil passed to the government at Robinson, that therefore it was the property of the government during transit, and that the carrier was entitled to charge for transportation only government or land grant rates. On the other hand, it is the contention of the intervener that title did not pass until the oil was delivered at Broadview, that therefore the property during transportation was not the property of the government, and that it was entitled to charge the commercial rate. The further contention is made that in any event the commercial rate should be applied for the reason that any arrangement between the plaintiff and the government was for the benefit of the former and not the latter. In other words, it is argued that the provision for land grant rates can be utilized only for the benefit of the government and not for the benefit of a third party.

■ The lower court concluded that title to the oil shipped from Robinson did not pass to the government until it arrived at Broadview, Illinois. Plaintiff, ostensibly in support of its contention that title passed at Robinson, also argues that title to oil consigned under the original contract passed at Lemont. On this position, we think plaintiff clearly is in error. Plaintiff's bid was made in response to the government's invitation upon a blank form furnished by the government, with deliveries to be made according to certain specifications and conditions. The form of invitation called for bids (a) for delivery F. O. B. destination, and (b) F. O. B. bidder's bulk plant. Plaintiff's bid was under designation (a).

The specifications and conditions set forth in the government's proposal stated, among other things: "Where bids on tank car requirements are called for F. O. B. bidder's bulk plant and also F. O. B. destination (delivery on railroad tracks of the ordering activity), the government reserves the right to make award on either basis. * * * In determining awards for tank car items on which bidders are to quote * * * prices F. O. B. their bulk plants, consideration will be given to transportation costs based on published rates, less land grant allowances, if any * * *." As stated, plaintiff's bid was "for delivery F. O. B. destination." We need not stop to inquire the significance which ordinarily attaches to an F. O. B. destination or to review the authorities relative thereto, for the reason that it was plainly provided that plaintiff's bid "F. O. B. destination" was "delivery on railroad tracks of the ordering activity," which was Broadview, Illinois.

The time when the government became the owner of the oil shipped from Robinson presents a question not free from doubt. When plaintiff was no longer able to make shipments from Lemont, a modified arrangement was made permitting shipments from Robinson, the exact terms of which are in dispute. Plaintiff contends that the arrangement provided for the delivery of the oil to the government at Robinson, to be shipped on government bills of lading at land grant rates, deducting such rates from the contract price. The government admits that it agreed to the change of the place of shipment and that the freight rates should be deducted from the contract price, but disputes that it agreed to accept delivery at Robinson or that it made any agreement with reference to the freight rate which should be charged. There is no dispute but that the government was to continue the purchase of oil at the original contract price and that government bills of lading on which the ship-

[1] This provision has been construed as securing to the government only the free use of the road and not transportation for property free of charge. Lake Superior & Miss. R. Co. v. United States, 93 U.S. 442, 23 L.Ed. 965.

ments from Robinson were made were actually furnished by it.

■ Plaintiff, not without merit, relies strongly upon the circumstance that shipments made on government bills of lading disclose an intention on the part of the government to accept delivery at Robinson. Such an arrangement, however, is not conclusive as to the ownership of property during transportation. Louisville & Nashville R. Co. v. United States, 267 U.S. 395, 398, 45 S.Ct. 233, 69 L.Ed. 678. When the modified arrangement was made, the government continued to issue its purchase orders F. O. B. Broadview, Illinois. As pointed out, that designation was defined by the government in its invitation for bids as meaning the point of delivery. It was so used in its purchase orders under the original contract, and we are of the view that it should be similarly construed with reference to the shipments from Robinson.

■ There is other proof, mostly parol evidence, which plaintiff relies upon in support of its position that the government acquired title at Robinson, which, in view of what is to follow, we do not deem necessary to discuss. It is sufficient to say that we have studied it and are not convinced that the court erred in concluding that title passed at Broadview.

■ However, assuming that title passed at Robinson, we still are of the view that there can be no recovery. The court found that plaintiff "entered into an arrangement with certain officers of defendant, United States of America, to ship during the emergency interval fuel oil from Robinson, Illinois, on government bills of lading, so it could obtain the benefit of land grant rates." Notwithstanding plaintiff's insistence to the contrary, we think the record discloses conclusively that the proposal to make shipment from Robinson on government bills of lading was made by the plaintiff for the purpose of enabling it to secure the benefits of land grant rates. Plaintiff's argument that the reduced freight rates were for the benefit of the government is not tenable. The purchase price of the oil remained unchanged, and it was immaterial to the government whether the transportation charge which it was authorized to deduct from the purchase price was figured on the basis of commercial or land grant rates. Except for the fact that plaintiff sought and now seeks the benefit of such rates, there would be no basis for this law suit.

It is irrelevant that the extent of its liability for damages upon breach of its contract would depend upon the price which the government would have been required to pay for oil from some other source or market. The fact is that plaintiff was obligated to furnish the oil in accordance with its contract and had given a bond for faithful performance. A breach would have exposed it to the risk of whatever damage might result therefrom. That plaintiff was keenly aware of its obligation to furnish oil and its purpose in procuring shipment at land grant rates is disclosed by a statement in its letter of March 5, 1936 directed to the Veterans Administration, as follows: "We realized our position to keep you supplied with oil regardless of the failure of our source of supply, and in putting this oil in to you at the land-grant rate basis we suffered quite a loss as compared with the selling by us of this oil out of Robinson on commercial freight rate bases to other customers."

The situation thus disclosed brings us to the question as to whether a carrier should be required to transport freight at land grant rates for the benefit of a party other than the government. No case has been cited, and we are unable to find one where this question has been decided. All of the reported cases of which we are advised involve a dispute between the government and a carrier as to the application of such rates. In such cases, the courts have evinced a tendency to construe a land grant provision favorably to the government. Southern Pacific Co. v. U. S., 307 U.S. 393, 401, 59 S.Ct. 923, 83 L.Ed. 1363. We are of the view, however, that there is no room to construe such a provision so that the benefit will accrue to a third person.

■ The language of the provision "shall be and remain a public highway, for the use of the government of the United States" means, so we think, for the benefit of the government and precludes the thought that it can be utilized for the benefit of those other than the government. A land grant provision is in the nature of a contract between the government and the carrier, whereby the former agrees to convey the right of way for the construction of a railroad (or other form of carriage), for the consideration of a reduced toll or charge for the transportation of government property. Such a relation is for the benefit of the government and the public,

but not for the benefit of individuals or third parties. Cf. Burke v. Southern Pacific R. Co., 234 U.S. 669, 680, 34 S.Ct. 907, 58 L.Ed. 1527. The same principle was announced by the Interstate Commerce Commission in Givens v. Louisville & N. R. Co., 140 I.C.C. 605, 606, as follows: "It is improper to permit the benefit of special rates on Government material to accrue to anyone other than the Government itself. Havens & Co. v. Chicago & N. W. R. Co., 20 I.C.C. 156, 158."

We, therefore, are satisfied that the intervener was not obligated, in fact was without authority, to transport the freight in question at land grant rates, for the reason that such rates would have inured solely to the benefit of the plaintiff. This is so even though plaintiff had an agreement as contended with the government's purchasing agent. A contrary holding would permit a shipper to obtain a preferential transportation rate under the guise that it was for the benefit of the government.

The further point is made that the intervener, having charged at the land grant rate and received payment from the government on such basis, should not now be permitted to assert that it is entitled to charge the commercial rate. If this dispute was between the government and the intervener, it would be necessary to examine the circumstances under which the reduced rate was charged. However, as the government is making no point in this respect, and in view of our conclusion that plaintiff is not entitled to recover on the basis of a land grant charge, we are of the view that the point need not be further considered. The judgment is affirmed.