## UNITED STATES v. CRAWFORD et al.
### No. 11147.

District Court, E. D. Pennsylvania.
Nov. 10, 1943.

Gerald A. Gleeson, U. S. Atty., and Francis W. Sullivan, Asst. U. S. Atty., both of Philadelphia, Pa., for the government.

Raymond Pace Alexander, of Philadelphia, Pa., for Williams.

Edward A. Kelly, of Philadelphia, Pa., for Soifer and Vasper.

Herbert S. Levin, of Philadelphia, Pa., for Merves.

Thomas D. McBride, of Philadelphia, Pa., for Brill and Rosenfeld.

John E. Sheridan, of Philadelphia, Pa., for Frankina.

Edward W. Wells, of Philadelphia, Pa., for Masters.

Louis Lipschitz, of Philadelphia, Pa., for Kramer.

William A. Gray, of Philadelphia, Pa., for Berenbaum.

BARD, District Judge.

This matter is before the court on motions for new trial filed by a number of the defendants after a verdict of guilty had been rendered against all of the defendants who had not entered pleas of guilty during the trial.

The defendants were indicted under Section 37 of the Criminal Code of the United States, 18 U.S.C.A. § 88, upon a charge of conspiracy to commit offenses against the United States. The indictment charged a conspiracy to violate Sections 35(C) and 48 of the Criminal Code.

Section 35(C) of the Criminal Code, 18 U.S.C.A. § 82, provides: "Whoever shall take and carry away or take for his use, or for the use of another, with intent to steal or purloin, or shall willfully injure or commit any depredation against, any property of the United States, or any branch or department thereof, or any corporation in which the United States of America is a stockholder, or any property which has been or is being made, manufactured, or constructed under contract for the War or Navy Departments of the United States, shall be punished * * *."

Section 48 of the Criminal Code, 18 U.S.C.A. § 101, provides: "Whoever shall receive, conceal, or aid in concealing, or shall have or retain in his possession with intent to convert to his own use or gain, any money, property, record, voucher, or valuable thing whatever, of the moneys, goods, chattels, records, or property of the

United States, which has theretofore been embezzled, stolen, or purloined by any other person, knowing the same to have been so embezzled, stolen, or purloined, shall be fined * * * or imprisoned * * *".

The indictment charged that the defendants, or some of them, wilfully took and carried away, with intent to steal, certain property made under contract for the War Department of the United States, and that certain other of the defendants unlawfully received, with intent to convert to their own use and purposes, certain property made under contract for the United States, which property they knew had been stolen from Sharp & Dohme, Inc., which corporation was under contract with the United States for the manufacture of the aforementioned property.

At the time of the trial, the defendants Crawford, Jones, Gary and Evans changed their pleas from not guilty to nolo contendere, and the trial proceeded against the remaining defendants.

The proof offered by the prosecution tended to establish the following facts: The defendants Crawford, Jones and Gary were employed by Sharp & Dohme, Inc., a manufacturer of pharmaceutical products which was engaged in the manufacture of a quantity of the product sulfadiazine under a contract with the War Department of the United States. These defendants devised a plan by which they succeeded in surreptitiously removing from the plant of Sharp & Dohme a number of bottles containing large quantities of sulfadiazine tablets manufactured under this contract, with the aid of the defendant Williams, who was engaged in the removal of rubbish from the plant.

Gary made inquiry of the defendant Merves, a druggist, whether he was interested in purchasing any sulfadiazine and was advised by Merves that Merves would let him know whether he wished to make any purchases of the drug. Merves communicated with the defendant Brill, a physician, to inquire whether Brill could use the drug. Brill at first told Merves he could not use it, but later arranged to sell it to a drug salesman who had solicited him to sell him any surplus drugs. Merves thereupon arranged through Gary for the delivery of a number of the stolen bottles of sulfadiazine to his store, where Brill obtained them and sold them to the drug salesman. Several transactions of this nature occurred, as a result of which some 41 bottles of sulfadiazine were purchased from Gary by Merves and transmitted to Brill and the drug salesman.

The remaining defendants were principally druggists who subsequently purchased or sold bottles of sulfadiazine bearing a code symbol which enabled Sharp & Dohme to identify them as having been manufactured under this particular contract with the War Department and as having been stolen from their premises. For reasons which will appear hereafter, it is unnecessary to set forth the testimony as to their transactions with respect to the sulfadiazine.

Numerous grounds have been urged by the defendants in support of their motions for a new trial. The principal ones are (1) that there was no single conspiracy among the defendants named, but at most a number of unrelated conspiracies between and among various of the defendants; and (2) that there is no proof that the sulfadiazine purchased by any of the defendants charged with conspiring to receive property of the United States theretofore stolen by another, knowing that it was so stolen, was the property of the United States.

Upon a careful consideration of the evidence in this case, I have concluded that the defendants' contention with respect to this latter ground must be sustained. There is no proof that the sulfadiazine in question was ever the property of the United States. On the contrary, the contract for its manufacture, which was offered in evidence by the prosecution, calls for the manufacture and delivery of the sulfadiazine to delivery points specified by the War Department and establishes that title to the undelivered sulfadiazine in question in the present case had never passed to the United States.

▪ It will be noted that Section 35(C) of the Criminal Code, 18 U.S.C.A. § 82, which has been quoted above, was amended in 1938 to make it a crime against the United States to steal property made or being made "under contract for the War or Navy Departments of the United States", whereas previously this section had made it a crime to steal only property owned by the United States or any department thereof or any corporation in which the United States was a stockholder. The section relating to receiving stolen property was not so amended. While it has been argued that Section 48 of the Criminal Code, making it a crime to receive prop-

erty of the United States theretofore stolen from the United States, should be construed to include property thus being manufactured for the War Department, so that the provisions of this section would be complementary to those of Section 35(C), there can be no justification for such a construction of a criminal statute. Even assuming that the failure of Congress to amend Section 48 to conform to the amendment of Section 35(C) of the Criminal Code was an oversight, a defendant may not be convicted under a statute making it a crime to receive property of the United States theretofore stolen from it where there is no evidence that the United States was the owner of the property stolen. Nor can he, in the absence of such evidence, be convicted of conspiring to violate such a statute.

There was no evidence offered by the prosecution which would support a conviction of any of the defendants other than Crawford, Jones, Gary and Williams, of conspiring to steal property made under contract with the United States. The evidence as to the remaining defendants was designed to show their participation in a conspiracy to receive property stolen from the United States. Since the evidence failed to establish that the property in question was the property of the United States, the motion of the defendants Merves, Brill, Frankina, Soifer, Vasper, Masters, Kramer, Rosenfeld and Berenbaum for a directed verdict of not guilty should have been granted.

The remaining defendant, Evans, pleaded guilty during the course of the trial, giving his connection with the affair. No evidence was presented to show that he had any connection with the stealing of the tablets. For this reason the court will permit him to withdraw his plea of guilty.

The evidence produced at the trial showed many of the defendants resorted to sordid and nefarious practices that merit the condemnation and contempt of all decent citizens. The evidence showed many of them knew they were trafficking in stolen goods, even though they may have had no knowledge that these tablets were being manufactured for the armed forces to be used to save the lives of young men who are defending our country. But, for the technical reason above stated—the failure of Congress to amend the section relating to receiving stolen property, to include property being manufactured for the War

or Navy Departments—a verdict of guilty cannot be sustained in a Federal Court against some of these defendants.

Since the indictment appears valid on its face, I doubt whether I can enter an order arresting judgment, but must grant some of the motions for a new trial.

The motions of the defendants Merves, Brill, Frankina, Soifer, Vasper, Masters, Kramer, Rosenfeld and Berenbaum for a new trial are granted.