**PACIFIC ELECTRIC RY. CO. v.
UNITED STATES.**
Civil Action No. 4256.

District Court, S. D. California,
Central Division.

May 19, 1947.

Frank Karr, C. W. Cornell, and E. D. Yeomans, all of Los Angeles, Cal., for plaintiff.

James M. Carter, U. S. Atty., and Charles H. Veale, Asst. U. S. Atty., both of Los Angeles, Cal., and J. Francis Hayden, Sp. Asst. to Atty. Gen., (Paul D. Page, Sol., Maritime Commission, George Galland, Atty., Maritime Commission, and Hubert H. Margolies, Atty., Department of Justice, all of Washington, D. C., of counsel), for defendant.

MATHES, District Judge.

Pacific Electric Railway Company, a common carrier by rail, has brought this suit under the Tucker Act, 28 U.S.C.A. § 41(20), to recover the balance allegedly due on shipments of freight carried during the years 1941 to 1944. The freight consisted of various materials required for the construction of "Liberty" ships built for the United States Maritime Commission.

The shipments in controversy were carried on Government bills of lading, and were consigned to the United States Maritime Commission at Los Angeles harbor.

As the last in a series of connecting carriers, plaintiff submitted bills for such transportation, basing the charges on commercial tariff rates.

All carriers participating in the transportation services were either land-grant aided railroads, or were subject to rate equalization agreements "to accept land-grant rates for shipments [such as those involved in the case at bar] which the United States could alternately move over a land-grant road." United States v. Powell, 67 S. Ct. 742, 743. Releases permitted by the Transportation Act of 1940, 49 U.S.C. § 65, had been filed by all land-grant carriers involved.

Hence the applicable rates are governed by § 321(a) of the Act, which provided, prior to amendment in 1945, 79th Cong., 1st Sess., P.L. 256, c. 573, § 3, 59 Stat. 607, that "the full applicable commercial rates, fares, or charges shall be paid for transportation by any common carrier subject to such Act of any persons or property for the United States, or on its behalf, except that the foregoing provision

shall not apply to the transportation of military or naval property of the United States moving for military or naval and not for civil use * * *." 54 Stat. 954, 49 U. S.C. § 65(a).

Maintaining that pursuant to the above-quoted provisions of § 321(a) the shipments were entitled to land-grant rates, the Government paid plaintiff's freight bills accordingly. Plaintiff now seeks to recover the difference between the land-grant rates and the full commercial rates.

Determination of whether the shipments in question were entitled to land-grant rates involves two questions: (1) Whether the materials covered by the bills of lading were the property of the United States at the time of shipment? and (2) if Government property, whether "military or naval property * * * moving for military or naval and not for civil use" within the meaning of § 321(a)?

The recent decision by the Supreme Court in Northern Pacific Ry. Co. v. United States, 67 S.Ct. 747, is controlling as to the second question. If Government property, this court is bound by that precedent to hold the shipments entitled to land-grant rates pursuant to § 321(a).

Most of the shipments were admittedly Government property at the time of carriage. As to these shipments, plaintiff has been fully paid.

However, as to the shipments covered by its freight bills Nos. F–10503–12, F–10610–1 and F–10540–1, plaintiff contends that title to the property did not pass to the Government until shipment was completed.

Bill No. F–10303–12 was for transportation on Government bill of lading MC–88579 issued November 25, 1941, covering steel plates furnished under contract MCc (ESP)–1520 between the Maritime Commission and Inland Steel Company.

Bill No F–10610–1 was for transportation on Government bills of lading MC–22992 and MC–19113. Bill of lading MC–22992, issued October 3, 1941, covered steel angles and steel channels furnished under contract MCc(ESP)–1145 between the Maritime Commission and Carnegie-Illinois Steel Corporation. Bill of lading MC–19113, issued September 19, 1941, covered

steel plates furnished under contracts MCc (ESP)–1016 and MCc(ESP)–1083 between the Maritime Commission and Jones & Laughlin Steel Corporation.

Bill No. F–10540–1 was for transportation on six Government bills of lading, of which only MC–28270 and MC–34759 are in dispute. Bill of lading MC–28270, issued October 13, 1941, covered steel plates furnished under contract MCc(ESP)–1837 between the Maritime Commission and Otis Steel Company. Bill of lading MC–34759, issued December 11, 1941, covered steel sheets furnished under contract MCc(ESP)–2690 between the Maritime Commission and Youngstown Sheet & Tube Company.

■ It is the rule in most jurisdictions that the time of transfer of title as between seller and buyer is to be determined by the intention of the parties to be gathered from their conduct, the terms of the contract, the usages of the trade and other circumstances surrounding the transaction. Uniform Sales Act, §§ 17, 18.

■ That all the shipments in controversy were on Government bills of lading would ordinarily indicate the parties intended that title pass to the buyer upon delivery to the carrier at point of shipment. "The general rule is that title passes from seller to buyer with the delivery of the goods." Louisville & Nashville R. Co. v. United States, 1925, 267 U.S. 395, 400, 45 S.Ct. 233, 235, 69 L.Ed. 678. And in United States v. R. P. Andrews & Co., 1907, 207 U.S. 229, 240, 28 S.Ct. 100, 104, 52 L. Ed. 185, the Supreme Court held: "That, as a general rule, the delivery of goods by a consignor to a common carrier, for account of a consignee, has effect as delivery to such consignee, is elementary."

■ However, the fact that goods are shipped on Government bills of lading is not conclusive as to government ownership of the property. United States v. Galveston, Harrisburg & San Antonio Ry., 1929, 279 U.S. 401, 49 S.Ct. 362, 73 L.Ed. 760; Louisville & Nashville R. Co. v. United States, supra, 267 U.S. at page 393, 45 S.Ct. 233, 69 L.Ed. 678; Henry H. Cross Co. v. United States, 7 Cir., 1943, 133 F.2d 183, 186.

Contract MCc(ESP)–1520 required that all shipments be made on Government bills of lading, that cash discounts were to be allowed on delivered price less transportation charges and that changes in freight rates were for the account of the buyer. These factors indicate an intention to pass title upon delivery to the carrier.

The contract further stipulated that the material was to be furnished in accordance with the seller's proposal of June 27, 1941. That proposal provided, among other things, that if the Government desired to take advantage of land-grant rates, the buyer might take possession at the seller's plant and ship on Government bills of lading and the seller would deduct the regular commercial freight rates from the price. Such provisions also point to an intention to transfer title upon delivery to the carrier.

To the contrary, however, the contract expressly provided that the seller's responsibility for delivery would not terminate until arrival of the material at destination and that: "Title to all of the products covered by this order will remain in the seller until delivery thereof has been made to the buyer at the destination herein named."

Contracts MCc(ESP)–1145, MCc(ESP)–1837 and MCc(ESP)–2690 also provided that all shipments were to be on Government bill of lading, but that title should remain in the seller until delivery at destination.

The usual indicia of intention become immaterial in the face of an express contractual provision reserving title in the seller during shipment.

The Government urges that the manifest inconsistency of reserving title in the seller and shipping by Government bill of lading is but an "oversight." Be that as it may, the law does not permit a court to read out of a contract language expressly reserving title in the seller until delivery at destination.

The record here indicates that it was not until December of 1942 that the Maritime Commission thought of claiming land-grant rates; whereas the contracts in question were negotiated, and the relevant bills of lading were issued a year or more prior to that time.

"Congress, by writing into § 321(a) an exception, retained for the United States an economic privilege of great value." Northern Pacific Ry. Co. v. United States, supra, 67 S.Ct. 747, 752. But "oversight" on the part of the Maritime Commission in the drafting of contracts cannot defeat plaintiff's right to the full commercial rates for transportation of "military or naval" materials which were not the property of the Government at the time of shipment. United States v. Galveston, Harrisburg & San Antonio Ry., supra, 279 U.S. at page 405, 49 S.Ct. 362, 73 L.Ed. 760; Louisville & Nashville R. Co. v. United States, supra, 267 U.S. at page 401, 45 S.Ct. 233, 69 L.Ed. 678. Cf. Oregon-Washington R. & Nav. Co. v. United States, 1921, 255 U.S. 339, 41 S.Ct. 329, 65 L.Ed. 677.

■ Contracts MCc(ESP)–1083 and MCc(ESP)–1016 set forth a schedule of destination prices and provide that if shipment be made on Government bills of lading the price would be the destination price less an allowance for commercial rate of freight. The materials involved were shipped on Government bills of lading, and the contracts contain no provision reserving title in the seller until delivery at destination. Thus the usual indicia of intention govern, and it must be held that the parties intended passage of title upon delivery to the carrier. Accordingly, the shipment covered by Government bill of lading MC–19113 was entitled to move at land-grant rates, and plaintiff has been fully paid as to that shipment.

■ Inasmuch as the materials furnished under contracts MCc(ESP)–1520, MCc(ESP)–1145, MCc(ESP)–1837 and MCc(ESP)–2690 were not the property of the United States at the time of shipment, hence not entitled to transportation at land-grant rates, plaintiff is entitled to recover $1,143.66 representing the unpaid balance—the difference between the full commercial rates and the land-grant rates—on shipments covered by Government bills of lading MC–88579, MC–22992, MC–28270 and MC–34759.

Counsel for plaintiff will submit findings of fact, conclusions of law and judgment pursuant to local rule 7 within ten days.