## NORTHERN PAC. RY. CO. v. UNITED STATES.
### Civ. No. 1373.

United States District Court

D. Minnesota, Third Division.

April 7, 1951.

Conrad Olson, Asst. General Counsel, Northern Pac. Ry. Co., St. Paul, Minn., for plaintiff.

C. U. Landrum, U. S. Atty., James J. Giblin, Asst. U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

Plaintiff brings this suit under the Tucker Act, 28 U.S.C.A. § 41 (20) [now § 1346] on behalf of itself and connecting common carriers by rail, to recover the balance claimed to be due for transportation of twenty-eight carloads of freight which moved to points on its line during October, 1944, and June and July, 1945, from points of origin on lines of plaintiff and connecting carriers.

The complaint discloses that the shipments on which the plaintiff's claim is based were transported to named points of destination pursuant to stated terms and shipping instructions given by the United States Navy Department, and contained in fourteen Government bills of lading.

The total applicable freight charges, less land grant deductions, as made under tariffs filed and published by plaintiff and its connecting carriers, were $40,822.58 and freight bills were rendered defendant therefor, which were partially honored by payment of the sum of $36,080.31, leaving an unpaid balance of $4,742.27.

By answer, defendant admits the unpaid balance, but has filed a counterclaim for $11,423.77, contending that certain other shipments consisted of government-owned property, or so designated, in a cost-plus contract, which is set forth in full, marked Exhibit "A" and made a part thereof, and for the service rendered plaintiff billed

and collected from the contractor-consignee charges based on full commercial rates, and finally paid by defendant.

Plaintiff's reply to the government's counterclaim alleges on information and belief that the supervisor referred to in the cost-plus contract did not at any time by written direction require that title should vest in the United States upon delivery of the materials and equipment to the carriers for transportation. It further appears that neither at the time that the shipments in question were tendered to plaintiff or its connecting carriers for delivery, nor during their transportation, did the government give any notice or make any claim of title or interest in the said shipments, such claim of title or interest therein having been asserted long after the shipments were delivered and full commercial rates paid by the consignee.

It appears that prior to April 14, 1942, Lake Washington Shipyards, a corporation, established a shipyard at Houghton, Washington, and on said date entered into an amended cost-plus-a-fixed-fee contract with defendant for the construction of 19 seaplane tenders. Under the terms of this contract, the contractor was required to procure and pay for, among other items, the necessary labor and materials for the construction of the vessels, and to pay for the transportation costs of such materials delivered to Kirkland, near which point the ships would be built, and the government was required to reimburse the contractor for his lawful costs, including such freight charges, and was to be paid by the government a fixed fee of $130,000 per vessel. In the execution of the contract, the contractor purchased certain materials for use in the construction of the vessels, and these materials were thereafter transported on commercial bills of lading by plaintiff and connecting common carrier

railroads between July 13, 1943, and October 18, 1944, to Kirkland, Washington.

It is undisputed that all participating carriers herein were either land grant aided railroads or were subject to rate equalization agreements to accept land grant rates for shipments which the United States could alternately move over the lines of a land grant carrier [1], and releases under the Transportation Act of 1940 [2] have been filed by the land grant carriers involved.

Plaintiff contends the materials shipped to the consignee at Kirkland, Washington, were not the property of the United States at the time of shipment, and hence were not entitled to transportation at land grant rates.[3]

Defendant contends the contrary, claiming the materials shipped to Kirkland were "naval property of the United States", and so entitled to land grant rates. This presents two questions for determination:

1. Were the materials described in the bills of lading the property of the United States at the time of shipment?

2. If owned by the United States at that time, did such materials constitute "military or naval property * * * moving for military or naval and not for civil use", within the meaning of Section 321 (a) of the controlling Act?[3]

■ Resort must be had to the cost-plus contract to determine ownership of the freight at the time of shipment, and particularly the pertinent proviso therein reading as follows: "Article 17 * * * (b) Title to each vessel under construction shall be in the United States and title to all materials and equipment acquired for any of the vessels shall vest in the United States upon delivery thereof to the plant of the contractor or other place of storage selected by the contractor, which ever of

1. United States v. Powell, 330 U.S. 238, 67 S.Ct. 742, 91 L.Ed. 868.

2. 49 U.S.C.A. § 65.

3. Section 321(a), prior to the amendment of 1945, provided that: " * * * the full applicable commercial rates, fares, or charges shall be paid for transportation by any common carrier subject to such

Act of any persons or property for the United States, or on its behalf, except that the foregoing provision shall not apply to the transportation of military or naval property of the United States moving for military or naval and not for civil use * * *." 54 Stat. 954, 49 U.S.C.A. § 65(a).

said events shall first occur; provided, that the supervisor may, by written direction, require that title shall vest in the United States upon delivery of such materials and equipment to the carrier for transportation to the plant of the contractor or other place of storage selected by the contractor. * * * The word 'supervisor' shall mean the Supervisor of Shipbuilding USN, Seattle, Washington."

The contract is clear with respect to the vesting of title in the government at the destination unless the supervisor would "by written direction, require that title shall vest in the United States upon delivery of such materials and equipment to the carrier for transportation to the plant of the contractor or other place of storage selected by the contractor."

Plaintiff's supporting affidavit substantiates its claim that the supervisor did not issue such "written direction" and defendant's counsel, with commendable frankness, has informed the court of his inability to produce such "written direction" or furnish secondary evidence in lieu thereof.

It is obvious that the record is devoid of anything that would tend to indicate an intent to vest ownership of the property shipped in the defendant. The absence of the "written direction" by the supervisor gives rise to a presumption of ownership in a person other than defendant. To conclude otherwise would do violence to the clearly expressed terms of the contract.[4] The claiming of land grant rates is manifestly the result of hindsight. Plaintiff does not dispute the fact that the freight in question was "military or naval property * * * moving for military or naval and not for civil use".[5] Plaintiff insists, however, that title to the freight did not vest in defendant until delivery at the ultimate destination, and hence, the full applicable commercial rates were properly paid and collected. I incline to the view

that defendant is not entitled to land grant rates.[6]

I am not impressed by defendant's point to the effect that the freight was to be used for the construction of ships and therefore was "naval property of the United States" within the meaning of Section 321(a) of the Transportation Act of 1940, at the time of delivery to the carrier, and so entitled to land grant rates, and that under the cost-plus contract the contractor was a mere purchasing agent for the defendant, and for that reason title to the freight was in the United States when shipped, notwithstanding the proviso of Article 17(b) of the contract relating to title and quoted, supra. The defendant has cited no authorities in support of the last-stated contention, and I have found none.

The express provisions of the contract indicate that the materials shipped to Kirkland were not "naval property of the United States", at the time of delivery to the carrier, and therefore the usual indicia of intention become immaterial. It seems clear, nonetheless, that failure of the supervisor to give "written directions", as provided by said Section 17(b) is evidence of intention not to exercise the right to title during shipment.

It is apparent from the complaint, answer, counterclaim, reply and affidavit of plaintiff's counsel that there are no factual questions in dispute for determination by the court. Therefore, plaintiff's motion for summary judgment has been appropriately made.

For the reasons above stated, I am of the opinion that plaintiff is entitled to summary judgment, and to recover the sum of $4,742.27 from the defendant without interest, costs or disbursements. The counterclaim of defendant is dismissed.

*It is so ordered.*

4. Pacific Electric Ry. Co. v. United States, D.C., 71 F.Supp. 987, affirmed, 9 Cir., 172 F.2d 222.

5. Northern Pacific Ry. Co. v. United

States, 330 U.S. 248, 67 S.Ct. 747, 91 L. Ed. 876.

6. Pacific Electric Ry. Co. v. United States, supra.