HEATH v. UNITED STATES.
No. 13799.

United States Court of Appeals,
Ninth Circuit.
Jan. 12, 1954.

See also 103 F.Supp. 1.

Hyman M. Greenstein, Honolulu, Hawaii, for appellant.

A. William Barlow, U. S. Atty., Nat Richardson, Jr., Asst. U. S. Atty., Louis B. Blissard, Asst. U. S. Atty., Honolulu, Hawaii, Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for appellee.

Before BONE, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

Appellant Heath was convicted in the United States District Court of Hawaii of wilfully converting and selling property of the United States in violation of 18 U.S.C.A. § 641. The sole question presented for our determination is whether or not the Government owned the property at the time it is alleged to have been converted and sold.

We have a sketchy record before us but it does disclose the following pertinent facts. On August 29, 1950, the Federal Supply Service, General Service Administration, hereafter the Government, entered into a written contract with the Hugo Neu Corporation of New York, hereafter the contractor, whereby the Government agreed to sell to the contractor a designated amount of brass scrap stored at the Hawaiian Ordnance Depot, Honolulu, Hawaii. In exchange for the scrap the contractor agreed to deliver to the Government specified amounts of copper.

Article 3 of the contract provided, in part, that the scrap metals would be "loaded f. o. b. common carrier conveyance at the present storage points designated in Article 2 [Hawaiian Ordnance Depot]. Such scrap metals shall be delivered to and accepted by the contractor 'as is', and the contractor shall be responsible for all necessary cleaning, segregating or other conditioning. * *

"At least ten days prior to the anticipated date of delivery of any scrap metal under this contract, the contractor shall furnish the Government, on forms to be supplied by the Government, information with respect to the destination to which such metal is to be shipped. * * *

"In effecting the delivery of the scrap metals, the Government will ship said scrap metals on commercial bills of lading, freight collect, to the consignment points designated by the contractor in accordance with the provisions of the above paragraph.

"The contractor shall be responsible for any loss and/or damage to Government-owned material shipped hereunder while such material is in transit or in the custody of the contractor. * * * *"

On September 14, 1950, the contractor sent a telegram to the Government requesting an authorization that its agent, Harry B. Kronick & Company, be permitted to load and haul the scrap metal from the storge site at the Ordnance Depot to the Waterman S. S. Line Pier at Honolulu for shipment to New York. This arrangement was agreed to. The Kronick Company in turn engaged appellant's trucking firm to do the actual hauling of the scrap. Appellant loaded the scrap at the Ordnance Depot, but, instead of delivering it to dockside, he sold and converted part of it to his own use.

In support of its contention that title to the scrap was in the Government at the time of the alleged conversion and sale, the Government relies solely upon the terms of the contract as originally written but without regard to subsequently changed conditions. It argues that it contracted to deliver the scrap to New York and hence title was not intended to pass until the property reached its ultimate destination.[1] Strong reliance is also placed upon certain wording of the

1. Rule 5: "If the contract to sell requires the seller to deliver the goods * * * at a particular place * * * the property does not pass until the goods have reached the place agreed upon." Uniform Sales Act, § 19.

contract referring to the scrap as "Government-owned material" while in transit.

The weakness of the Government's position is that it completely ignores the conduct of the parties subsequent to the written contract. It consented to a modification of the written agreement by agreeing in writing to deliver the scrap metal to the contractor at the place of storage instead of loading the scrap free on board a common carrier, and by this and other acts and conduct obviously changed whatever may have been the intent of the parties as to passage of title under the original contract.[2] For a proper determination of the question before us we must look to the agreement as modified.

It is elementary that the intent of the parties determines the time of passage of title under a contract of sale. Uniform Sales Act § 18(1).[3] Intention is to be ascertained from the terms of the contract, the conduct of the parties, the usages of trade, and other circumstances of the transaction. Uniform Sales Act § 18(2). If the actual intent of the parties is ambiguous, resort may be had to recognized rules of presumption. Uniform Sales Act § 19.

The contract being in writing and the facts undisputed, intent as to the time when title passes becomes a question of law. Rudy-Patrick Seed Co. v. Roseman, 1944, 234 Iowa 597, 13 N.W. 2d 347; Peterson v. Universal Automobile Ins. Co., 1933, 53 Idaho 11, 20 P.2d 1016. Such was the situation in the instant case and it was for the trial court to instruct the jury on that question. The trial court concluded that as a matter of law title was in the Government at the time of the alleged conversion. We think such a conclusion is erroneous.

Instead of loading the scrap f. o. b. a common carrier at the storage

point, the Government agreed to and did deliver the scrap to the contractor's subagent, appellant Heath. At that point title to the scrap passed to the contractor. Actual delivery of the goods to the buyer is the strongest evidence of an intent to transfer ownership. Pacific Electric Ry. Co. v. U. S., D.C.Cal., 1947, 71 F.Supp. 987, affirmed 9 Cir., 1949, 172 F.2d 222. Under the common law and the Uniform Sales Act delivery of the goods by the seller passes title to the buyer unless a different intention appears. Uniform Sales Act § 19, Rule 4(2). In the instant case the Government had no further duties under the contract once the goods were released to the contractor. It was expressly agreed that the contractor was to pay the freight and assume all risk of loss or damage during transit and did assume payment of all other expenses.

The decisive factor indicating the contractor's ownership of the goods is that the scrap was shipped under bills of lading naming the contractor as both consignor and consignee. The rule is well established that the form in which the bill of lading is taken indicates the transfer or retention of the property. 2 Williston on Sales § 282 (Rev.ed.1948). Where by the bill of lading the goods are deliverable to the buyer, the seller thereby transfers the property to the buyer. Uniform Bills of Lading Act § 40(a); District of Columbia v. Upjohn Co., 1950, 88 U.S.App.D.C. 34, 185 F. 2d 992; Edelstone v. Schimmel, 1919, 233 Mass. 45, 123 N.E. 333. Here the goods were not only deliverable to the buyer but the buyer also appeared on the bills of lading as the shipper. We are unable to conceive of more conclusive proof, absent a plain provision in a contract, that the parties regarded the contractor as the owner of the goods.

We conclude, therefore, that the scrap at the time of the alleged conversion be-

2. Both the Government and appellant admit that under the original contract, the intention of the parties as to passage of title is uncertain and ambiguous.

3. All jurisdictions having any connection with the subject-matter of this action have enacted the Uniform Sales Act, Hawaii, New York, and the District of Columbia.

longed to the buyer. There is a fatal variance between the allegations of the indictment and the proof. Rossi v. United States, 9 Cir., 1922, 278 F. 349; United States v. Crawford, D.C.Pa.1943, 52 F.Supp. 843.

The judgment of conviction is reversed, with directions to the District Court to dismiss the indictments.