## PHELPS v. UNITED STATES.
### No. 11377.

Circuit Court of Appeals, Ninth Circuit.
March 10, 1947.

Kenneth R. L. Simmons and Roy F. Allan, both of Billings, Mont., for appellant.

John B. Tansil, U. S. Atty., and Merle C. Groene, Asst. U. S. Atty., both of Billings, Mont., for appellee.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

GARRECHT, Circuit Judge.

The appellant, a member of the Crow Indian Tribe residing on the Crow Indian Reservation, in the State of Montana, was convicted of stealing 271 ewe sheep on the reservation, in violation of the provisions of 18 U.S.C.A. § 548. From the judgment of conviction, he brings this appeal.

Five specifications of error are urged in the appellant's brief. We shall consider each seriatim.

1. "The district court erred when it held that the grand jury's return of true bill without considering any competent evidence of jurisdictional elements of alleged offense was not in violation of appellant's Constitutional guarantees."

The objection specifically is that the grand jury "did not consider any competent evidence of jurisdictional elements of the alleged offense, namely: (1) That the defendant is an Indian person and (2) that the offense was committed on or without the jurisdiction of the United States Government * * *."

The grand jury docket, part of the record herein, shows that three witnesses testified before the grand jury—Vincent D. Garvey, special agent of the Federal Bureau of Investigation; Myron Lynde, a member of the partnership whose sheep were alleged to have been stolen; and R. L. Chamberlain, a rancher who testified at the trial that he hauled some sheep for the appellant and in whose possession the stolen sheep were found. Chamberlain said that he had known the appellant "probably twenty-five years", and that the 415 head that he bought from the appellant were all the sheep he had.

■ The appellant nowhere makes a satisfactory showing that these three witnesses or any one of them did not testify before the grand jury as to the appellant's race or as to the venue of the offense. He does, indeed, indulge in considerable speculation; but speculation is not proof. As was pointed out by Judge Gilbert in Olmstead v. United States, 9 Cir., 19 F.2d 842, 845, 53 A.L.R. 1472, affirmed, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, 66 A.L.R. 376, "The defendants could have had no personal knowledge of the evidence submitted to the grand jury."

2. "The district court erred when it refused to hold that the indictment was not sufficient because it failed to allege material and essential ingredients of the offense relative to venue."

As to venue, the indictment sets forth:
" * * * at or near Pitchfork and Hoodo [o] Creeks, on and within the limits of the Crow Indian Reservation, within the state and district of Montana, which said Crow Indian Reservation, was, at all of the times herein mentioned, ever since has been and now is under the exclusive jurisdiction of this Court, did, then and there," etc.

The appellant objects that the words of the applicable statute, 18 U.S.C.A. § 548, are "within any Indian reservation under the jurisdiction of the United States *Government*"; and that the language of the indictment, "under the exclusive jurisdiction *of this Court,*" is not "synonymous." [Emphasis supplied.]

The decision that the appellant quotes in support of his position is that in the case of Harris v. United States, 8 Cir., 104 F. 2d 41, 45, in which the following language was used:

"The basic principle of American jurisprudence is that no man shall be deprived of life, liberty or property without due process of law. In a criminal proceeding, the indictment must be free from ambiguity on its face; the language must be such that it will leave no doubt in the minds of the court or defendant of the exact offense which the latter is charged with. It should leave no question in the mind of the court that it charges the commission of a public offense."

■ Both on the law and on the facts as shown in this record, it is clear that neither court nor appellant was in the slightest degree misled by the indictment's slight deviation from the statutory language.

■ That a Federal court can take judicial notice of the boundaries of an Indian reservation situated within its district is too elementary to require citation of authorities. Furthermore, the record shows that the appellant's own counsel asked "the court to take judicial knowledge of the federal regulations of the Interior Department, Title 25, Indians, Section 71.11, Indian competitive bidding." A tribunal that is expected to take judicial notice of such minutiae can certainly take judicial notice of the boundaries of an Indian reservation under its "exclusive jurisdiction"!

Nor was the appellant deceived. His own testimony showed that he is a member of the Crow Indian tribe; that he resides on the reservation; that he was able to point out the location of his very house on a map of the reservation; and that he took an appeal from the Commissioner's award of unit 24 of the reservation, for which the appellant had made an unsuccessful official bid.

The appeal from the Commissioner's award was taken by the appellant to the Secretary of the Interior. It is clear, therefore, by his own testimony that the appellant knew that the reservation was within the "jurisdiction of the United States."

In connection with this second specification of the appellant's the following pro-

628

visions of 18 U.S.C.A. § 556 should be borne in mind:

"No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant. * * *"

Our study of the record convinces us that the appellant was in no way "prejudiced" by the slight deviation referred to above.

3. "The district court erred when it allowed the case to go to the jury because of the government's failure to prove any possession or control in the defendant of the property alleged to have been stolen."

█ We have already adverted to some of the evidence adduced against the appellant. We will continue the summary:

Lynde testified that he went out to Chamberlain's ranch and saw that part of the sheep that were grazing there were his. He said he "recognized" his sheep.

Chamberlain told Lynde that he had bought the sheep from the appellant. Chamberlain repeated the statement on the witness stand. The appellant testified that he sold "some" sheep to the Central Livestock Company in July and "sold the rest of them" to Chamberlain in November. In his testimony, the appellant apparently accepted Chamberlain's count of the number of sheep he had sold to Chamberlain—415.

Sheriff Roy G. Riley, of Big Horn County, testified that when, in his presence, Lynde claimed that the sheep were his, the appellant replied that if they were Lynde's sheep, "for him · to get them." Barry Roberts, state livestock inspector, while on the stand quoted Phelps as saying to Lynde: "I sold the sheep to Chamberlain and if the sheep are yours go ahead and take them." Roberts repeated the latter half of the statement on cross-examination. Joe Nichols, deputy sheriff of Yellowstone County, who also was present at the same conversation, testified to the same effect.

Lynde himself testified on the subject as follows:

"I told Bud that I found some of my sheep there [on Chamberlain's ranch] and I had a herder coming in and I planned on taking them home. * · * * Well, Bud said, Bud told me that if my sheep were there to go ahead and go to work on them."

The jury could well draw the inference from this conversation, as to which four witnesses agreed, that the appellant's ready acquiescence in Lynde's plan to claim the sheep resulted from the appellant's realization that he had no title to the sheep that he had sold to Chamberlain.

Accordingly, we believe that there was sufficient evidence to go to the jury.

4. "The district court erred when it held that there was not a fatal variance between the indictment and the proof relative to the brands on the sheep alleged to have been stolen."

As to the brands, the language of the indictment is as follows:

"* * * Approximately two hundred seventy-one (271) ewe sheep bearing 'Triangle,' 'Circle,' and 'Parallel Bar or Double Bar' blue paint brands," etc. [Emphasis supplied.]

The appellant urges that there was a "fatal variance" between indictment and proof, in that the Government's evidence "showed that some of the sheep were branded with a blue paint symbol of a triangle, while others were branded with a blue paint symbol of a circle, and others were branded with a blue paint symbol of parallel bar or double bars."

"None of the sheep," the appellant points out, "was shown to have been branded with any words and none of them carried more than one symbol brand."

The objection, then, is twofold: First, that the indictment charges that *words* were branded on the animals; and, second, that by the use of the conjunctive "and" instead of the disjunctive "or", the indictment alleges that *each* ewe carried *all three* brands.

█ As to the first half of the objection, it need be pointed out only that the indictment does not allege that *words* were branded on the sheep. The statement is that the ewes bore certain designated "blue paint brands." The expression "words" is not used anywhere throughout the entire indictment.

Regarding the use of the conjunctive instead of the disjunctive, we are satisfied from an examination of the record that the appellant was not prejudiced thereby.

In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, it was said:

"The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" [Cases cited.]

See also 18 U.S.C.A. § 556, supra.

5. "The district court erred when it allowed the indictment to go to the jury with the exhibits in the case."

The court below twice instructed the jury that the indictment was not evidence, and explained to them that they were being allowed to have it merely "to read the charge and only for that purpose to consider the charge." The learned trial judge put his second admonition in the form of a "warning." His language was clear, explicit and emphatic, and could not have been misunderstood by the jurors. We find no error in the fact that the jury was allowed to have the indictment to examine during its deliberations.

From an examination of the record, we are satisfied that the appellant's substantial rights were carefully safeguarded during the trial.

It was to cover cases precisely like the present, in which a convicted defendant seeks to escape condign punishment by raising technical objections, that Rule 52(a) of the new Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687, was promulgated:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

See also "Trends in Federal Law and Procedure," by Judge Grover M. Moscowitz, 5 F.R.D. 361, 381.

Accordingly, the judgment is affirmed.