UNITED STATES of America

v.

Emile J. DAIGLE.

Crim. No. 1122–56.

United States District Court
District of Columbia.

March 21, 1957.

Oliver Gasch, U. S. Atty. for District of Columbia, Joel D. Blackwell, Asst. U. S. Atty., Washington, D. C., for plaintiff.

William H. Collins, Washington, D. C., for defendant.

KEECH, District Judge.

This case is before the court on a motion for new trial or judgment of acquittal notwithstanding the verdict.

The defendant, Emile J. Daigle, was charged in an eight-count indictment with embezzlement, grand larceny, forgery, and uttering, in connection with the payment of certain death benefits to the widows of two firemen by him, as Secretary-Treasurer of the Firemen's Family and Fraternal Relief Association (formerly the Firemen's Family Relief Association) of the District of Columbia Fire Department. The first four counts relate to a payment due Mrs. Thrasher, and the last four counts to a payment due Mrs. Ewers.

To summarize briefly the evidence relating to Counts 1 through 4: Mrs. Thrasher's husband died March 10, 1954. On August 12, 1954, the defendant came to her home and informed her that she was entitled to a death benefit from the Association. The defendant then had her sign a piece of paper, which was folded over and did not look like a check, paid her $100 cash, and said nothing about any additional sum due her. She did not recall signing any other paper on this occasion. The paper which bears Mrs. Thrasher's endorsement is a check payable to her in the sum of $600, dated August 12, 1954, and signed by the defendant as Secretary-Treasurer of the Relief Association, which the defendant cashed at the American Security & Trust Company on August 12, 1954. An expert witness testified that the figure "6" in the amount of the check had been raised from a "1", but could not state when the change had been made. On April 18, 1956, the defendant again came to Mrs. Thrasher's home, gave her an envelope containing an additional $600 in cash, stating that it was the balance of her husband's insurance and telling her to say that she had had it a long time if anyone should ask about it. Defendant then had her sign an application for death benefit dated August 12, 1954.

The records of the Association, kept by the defendant, reflected that the death benefit of $600 due Mrs. Thrasher had been paid in full on August 12, 1954, as was also noted by the defendant on the back of a copy of Mr. Thrasher's death certificate, introduced as Government's Exhibit No. 11.

Summarizing the evidence relating to Counts 5 through 8: Mr. Ewers died November 2, 1954. On April 10, 1956, the defendant came to see Mrs. Ewers at her home and stated that she was entitled to a death benefit, although she had not filed an application. Defendant then showed her a check, blank as to amount, signed by him as Secretary-Treasurer of the Association, which he had her endorse on the back, and paid her $100 cash. Mrs. Ewers did not understand that there was more due her. She did not recall signing any other paper. The check was cashed by the defendant at the National Bank of Washington on April 23, 1956, after the sum of $500 had been inserted.

Mrs. Green, Mrs. Ewers' daughter, testified that on learning of the defendant's visit, she telephoned him and took him to task for having her mother endorse a check which was blank as to amount. Defendant at first refused to disclose to her the total amount due, and then told her that the death benefit was $500, the amount then being paid by the Association. After some discussion as to whether Mrs. Ewers was en-

titled to $500 or $600, the amount of death benefit fixed at the time of Mr. Ewers' death, the defendant told Mrs. Green that if she made any trouble about the matter, he could make trouble for Mrs. Ewers, who had been collecting a widow's pension although she had been separated from her husband for seven years before his death. Defendant wrote Mrs. Ewers, however, on the same day that the balance would be paid to her at any time she came in. Mrs. Ewers did receive an additional $500 a few days later, after a special meeting of the Board of the Association on April 13, 1956, at which it was determined that she was entitled to a total of $600, the death benefit in effect when Mr. Ewers died.

The defendant, in substance, testified that both Mrs. Thrasher and Mrs. Ewers had neglected to file applications for the death benefits due them, which according to the Association's by-laws should have been filed within a year of the deaths; that he went to see them and made a partial payment to each of them because he knew they were entitled to the money; that he made the checks out for the full amount due for bookkeeping purposes, and that he held the balance of the proceeds of each check in a safe in his home, pending receipt of the necessary papers from the applicant. He further stated that he told each of the complainants that the balance would be paid when the necessary papers were presented by her. According to defendant, the Thrasher application, signed April 18, 1956, was dated August 12, 1954, in order to avoid any question as to the timeliness of the application. He further testified that the Ewers claim and the balance of the Thrasher benefit were paid by him at that time because the Relief Association's fund was about to be taken over by the government, and he wished to clear up outstanding amounts.

The court granted a judgment of acquittal as to Counts 3 and 4, forgery and uttering of the Thrasher check, and submitted the case to the jury on the remaining counts. The jury were instructed that if they should find the defendant guilty on either of the embezzlement counts, they need not consider the larceny count dealing with the same transaction, and the court repeated that the jury might not find defendant guilty of both embezzlement and larceny as to the same transaction.

The case was submitted to the jury at 3:17 p. m. on the fourth day of trial. At 6:05 the jury reported to the court that they had been unable to reach a verdict on all counts, but had unanimously agreed on Counts 1 and 2. Upon the taking of a partial verdict, the jury returned a verdict of guilty as to both Count 1 and Count 2, embezzlement and grand larceny of the Thrasher funds. The court then had the jury polled on Count 1, and after the return of a unanimous verdict of guilty on Count 1, the Court, on its own motion, set aside the verdict under Count 2, directing entry of a verdict of not guilty.

When the jury returned the following morning the court repeated its entire charge as to Counts 5 through 8. After about two hours' further deliberation, the jury returned a verdict of not guilty on all the remaining counts, which pertained to the Ewers payment.

As grounds for his motion, defendant's counsel contends that the court erred in denying his motion to require the government to elect between the embezzlement and larceny counts, repeated at various stages of the trial; that the court erred in instructing the jury as to the effect of variance in the ownership of the funds described in the larceny counts; that the inconsistent verdict returned by the jury may not stand; that the court erred in denying his motion for a mistrial upon the jury's return of verdicts which were inconsistent and contrary to the court's instructions; and that the guilty verdict under Count 1 is contrary to the weight of the evidence and not supported by substantial evidence. Other grounds were stated in the motion, but were not pressed by counsel at the hearing thereon.

As to the court's refusal to require the government to elect between the embezzlement and larceny counts as to each transaction, this was a matter within the discretion of trial court. Dobbins v. United States, 81 U.S.App. D.C. 218, 157 F.2d 257, certiorari denied 329 U.S. 734, 67 S.Ct. 99, 91 L.Ed. 634, and cases there cited. The prosecution seldom, if ever, is required to elect upon which of several counts charging the same offense in various ways it will stand. Fulton v. United States, 45 App.D.C. 27, 41. The two counts charged the taking of the same money in different ways, and there was evidence on which the jury might have found the defendant guilty under either count, depending upon its view of the evidence. Although the defendant clearly had control of the funds by virtue of his office in the association, because of the peculiar method by which he secured the cash proceeds of the check and covered his misappropriation of the funds, the jury might have found the taking to constitute larceny by trick from the payee[1] rather than embezzlement from the Association.[2]

As to the court's instruction as to ownership of the funds, the court charged that although all four embezzlement and larceny counts alleged the money to be the property of the Association it would not be fatal to conviction if the jury should find the money to be that of the payee of the check. As stated in England v. United States, 5 Cir., 174 F.2d 466, 468:

"Variance as to ownership has not the importance in federal criminal procedure which it had at common law. It now spoils a trial only when the substantial rights of the accused are impaired; and his rights to a correct accusation are generally said to be to have sufficient information as to the charge against him,

and protection against being again placed in jeopardy. See Rule of Criminal Procedure 52(a) and Loper v. United States, 10 Cir., 160 F.2d 293; Phelps v. United States, 9 Cir., 160 F.2d 626, decided thereunder; and Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, decided under the former 28 U.S.C.A. § 391."

See also Bimbo v. United States, 65 App.D.C. 246, 249, 82 F.2d 852, certiorari denied 297 U.S. 721, 56 S.Ct. 670, 80 L.Ed. 1006; Cromer v. United States, 78 U.S.App.D.C. 400, 142 F.2d 697, certiorari denied 322 U.S. 760, 64 S.Ct. 1274, 88 L.Ed. 1588. In Berger v. United States, 295 U.S. 78, at page 82, 55 S.Ct. 629, at page 630, 79 L.Ed. 1314, the Supreme Court stated: "The true inquiry * * * is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused."

Inasmuch as there was no question in the instant case as to what specific sum of money was involved, so that the defendant had sufficient information to make his defense and there was no chance of double jeopardy, any variance in proof of ownership was not prejudicial.[3]

This is true not only as to the larceny counts, but also as to the embezzlement counts, because of the terms of the District of Columbia statute, D.C.C. § 22–1202, which defines embezzlement as the wrongful conversion of anything of value which comes into a person's possession or custody by virtue of his employment or office, "whether the thing so converted be the property of his master or employer or *that of any other person,* co-partnership, association, or corporation." Hence, the court's instruction as to variance in proof of ownership was not erroneous, whether it be construed

---

1. Beck v. United States, 62 App.D.C. 223, 224, 66 F.2d 203.

2. Cooper v. United States, 58 App.D.C. 325, 30 F.2d 567, 568.

3. Heath v. United States, 9 Cir., 209 F. 2d 318, cited by the defendant is not in point. There, the statute made government ownership an essential element of the offense charged.

as applying to the larceny counts only or to the embezzlement counts as well.[3-A]

■ In support of his contention that the verdict of guilty under Count 1 is contrary to the weight of the evidence and not supported by substantial evidence, counsel for the defendant argued that if any offense were proved, it was larceny from Mrs. Thrasher, rather than embezzlement from the Association. As has been stated, there is substantial evidence in the record to support a verdict of guilty under Count 1, particularly in view of the provision of our embezzlement statute as to ownership of the embezzled property.

The next question raised by defendant's motion is as to the propriety of the court's action upon the jury's return of guilty verdicts on both Count 1 and Count 2, contrary to the court's instructions. Counsel argues that the jury's verdicts showed a total lack of understanding or disregard by the jury of the charge as a whole, especially in view of its return of not guilty verdicts as to Counts 5 through 8 after the charge was repeated on the following day. Defense counsel further pointed out the jury's request, during its deliberations, for the copies of the death certificates, which had been introduced in evidence, as supporting his contention that the jury was concerned with irrelevant matters, expressing the view that the certificates could have had no rational bearing on the verdict.

· It must be pointed out that distinguishing facts may well account for the not guilty verdicts as to the Ewers transaction. The fact that the defendant paid Mrs. Ewers' claim in full within a few days after she endorsed the check and promptly after the Board's determination of the amount due her, could have raised a reasonable doubt whether the defendant intended to convert the funds permanently, while the defendant did not pay over to Mrs. Thrasher the balance of her claim for more than twenty months, and then only after he was threatened with trouble in connection with his handling of a similar death benefit. Further, the defendant's payment to Mrs. Thrasher of $100 more than she was entitled to—according to the defendant, in order to keep out of any trouble in connection with the Thrasher account—raises an inference that his actions in the matter would not bear inspection.

It is the view of the court that the jury's request for the death certificates showed a careful consideration of the evidence bearing on essential issues in the case. On the back of each certificate the defendant had noted the purported date of payment of the total death benefit, the Thrasher certificate indicating that payment had been made in full August 12, 1954.

■ It has often been held that rational consistency in a verdict is not necessary, and that each count in the indictment is to be regarded as if it were a separate indictment. Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356; Borum v. United States, 284 U.S. 596, 597, 52 S.Ct. 205, 76 L.Ed. 513, affirming 61 App.D.C. 4, 56 F.2d 301; United States v. Dotterweich, 320 U.S. 277, 279, 64 S.Ct. 134, 88 L.Ed. 48; Gillars v. United States, 87 U.S.App.D.C. 16, 182 F.2d 962. Where inconsistent verdicts of conviction and acquittal are returned, it has been said: "While the verdict as to each count must be consistent in itself, the verdicts on the several counts need not be consistent with each other. The question * * * is not whether the verdict of guilty * * * is consistent with the verdict of acquittal on the other counts. It is whether it is consistent with the evidence, that is whether the evidence supports the verdict, and this is true even though the inconsistency can be explained upon no

---

**3-A.** Although the instruction as to variance in ownership was given only as part of the charge on larceny, defense counsel argued the jury might have construed it as applying to both larceny and embezzlement.

rational considerations." Mogoll v. United States, 5 Cir., 158 F.2d 792, 793, certiorari denied Perniciaro v. United States, 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed. 1827, rehearing denied 331 U.S. 865, 67 S.Ct. 1315, 91 L.Ed. 1870; reversed on other grounds Mogall v. United States, 333 U.S. 424, 68 S.Ct. 487, 92 L.Ed. 783.

■ On the other hand, where a guilty verdict on one count negatives some fact essential to a finding of guilty on a second count, two guilty verdicts may not stand. Fulton v. United States, supra, 45 App.D.C. at page 41; Davis v. United States, 37 App.D.C. 126, 133.

At the defendant's request, the court instructed the jury if it should find the defendant guilty of embezzlement as to either transaction, it must return a verdict of not guilty as to the companion larceny count and, again, that verdicts of guilty of both larceny and embezzlement might not be returned with respect to the same transaction. Despite the court's instruction, which clearly would have been correct as to taking of the same property from the same person, it is not entirely clear, in view of the ownership provision of the District embezzlement statute, that the taking of property which is lawfully in the custody of the taker by virtue of his office or employment cannot be both embezzlement and, at the same time, larceny from a third person who owns the property, as to whom the taking would be unlawful.[4] The court's instruction with respect to dual verdicts therefore may have been more favorable to the defendant than the facts of this case warranted, particularly in view of the instruction as to variance in proof of ownership of the funds. A determination of this question is unnecessary for disposition of the instant motion since the court instructed the jury not to return dual guilty verdicts, but it may well be that some such reasoning brought about the jury's guilty verdicts on the two counts.

Admittedly, the jury disregarded the court's injunction against finding the defendant guilty of both embezzlement and larceny as to the same funds. It is equally clear that the jury found the defendant guilty of feloniously converting to his own use the money due Mrs. Thrasher, since it found him guilty of both embezzlement and larceny.

Rule 29(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that the court, on motion of a defendant or of its own motion, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. Under subsection (b) of the same rule the court may reserve decision on a motion for judgment of acquittal made at the close of all the evidence, submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty, and the motion may be renewed after conviction.

■ The court therefore had a right to direct a verdict of acquittal under Count 2 upon the jury's return of a verdict of guilty as to Count 1, in execution of the instruction to acquit defendant under Count 2 if he be found guilty under Count 1.

Even if this action be deemed a choice of verdicts by the court, the defendant was in no wise prejudiced, since the statutory penalty for embezzlement[5] is less severe than the penalty for larceny[6]

---

4. Fulton v. United States, 45 App.D.C. 27, 41, is not to the contrary. There the court properly held that guilty verdicts on two embezzlement counts alleging ownership of the same property in different persons could not stand.

5. D.C.C. § 22–1202: "[Embezzlement] * * * shall be punished by a fine not exceeding one thousand dollars, or by im-

prisonment for not more than ten years, or both: * * *."

6. D.C.C. § 22–2201: "Whoever shall feloniously take and carry away anything of value of the amount or value of $100 or upward * * * shall suffer imprisonment for not less than one nor more than ten years."

with its mandatory minimum sentence of imprisonment for one year.

■ Courts have the power also to correct any uncertainty in a verdict before discharging the jury. Bernhardt v. United States, 6 Cir., 169 F.2d 983, 985, certiorari denied 335 U.S. 903, 69 S.Ct. 407, 93 L.Ed. 437; Shiflett v. Welch, 4 Cir., 161 F.2d 933, 934, certiorari denied 332 U.S. 777, 68 S.Ct. 41, 92 L.Ed. 362, rehearing denied 332 U.S. 845, 68 S.Ct. 264, 92 L.Ed. 416; Anderson v. United States, 2 Cir., 294 F. 593, 597.

For the foregoing reasons, the defendant's motion for a new trial or judgment of acquittal will be denied.