**UNITED STATES of America, Plaintiff,**

v.

**Roland Richard DRIVER, a/k/a Roland Richard Mousseaux, Defendant.**

No. CR. 90–30026–01.

United States District Court, D. South Dakota.

Feb. 6, 1991.

Dennis Holmes, Asst. U.S. Atty., Pierre, S.D., for plaintiff Government.

Robert D. Hofer, Riter, Mayer, Hofer & Riter, Pierre, S.D., for defendant.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Convicted on all counts [I, II and III] after trial by jury, defendant now moves for acquittal or for a new trial (Fed.R.Crim. Proc. 29 and 33).

### I.

Count I of the indictment charged assault with a dangerous weapon, (18 U.S.C. § 1152 [1] and § 113(c)) and Count II charged assault with a dangerous weapon (18 U.S.C. § 1153 [2] and § 113(c)). Count III is not relevant to the issues raised concerning Counts I and II. The sole victim in Count I is the same person as the sole victim in Count II.

The act of assault with a dangerous weapon charged in Count I is the same act as that charged in Count II except that in Count I, jurisdiction is pled under § 1152 and, in Count II, jurisdiction is pled under § 1153.

The jury may convict under Count I if it finds that defendant was an Indian and the victim was not.[3] Under § 1152 there is no federal jurisdiction if the offense charged in Count I was committed by one Indian against another Indian. *United States v. Torres*, 733 F.2d 449 (7th Cir.1984), *cert. denied*, 469 U.S. 864, 105 S.Ct. 204, 83 L.Ed.2d 135 (1984).

The jury may convict under Count II if it finds that defendant was an Indian. Under Section 1153, there is no federal jurisdiction if defendant was not an Indian.

Defendant says, in essence, that the jury in Count I found him not to be an Indian and in Count II, found him to be an Indian and, thus, the jury verdict is inconsistent. Plaintiff answers that inconsistent verdicts do not necessitate either a new trial or the acquittal of the defendant. *See United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); *United States v. Benfield*, 593 F.2d 815, 822 (8th Cir.1979).[4]

### II.

■ As stated, defendant has moved for an acquittal or a new trial. Under Rule 29, the trial court may set aside a verdict of guilty and enter a judgment of acquittal if the Court finds the evidence is insufficient to sustain the conviction. When considering a motion for acquittal, a court must view the evidence in the light most favorable to the government and must sustain a jury verdict if there is substantial evidence to support it. *United States v. Possick*,

---

**1.** Section 1152 provides:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, ...

**2.** Section 1153 provides:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, ... assault with a dangerous weapon, ... shall be subject to the same laws and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

**3.** The evidence at trial established that victim is an Indian. He is an enrolled member of a tribe and testified that he is a full blooded Indian.

**4.** However, the Supreme Court specifically noted that its decision in *Powell* does not "decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other." 469 U.S. at 69, n. 8, 105 S.Ct. at 479. The Court cited *United States v. Daigle* as an example of this type of situation. *See United States v. Daigle*, 149 F.Supp. 409 (D.D.C.1957), *aff'd*, 248 F.2d 608 (D.C.Cir.1957), *cert. denied*, 355 U.S. 913, 78 S.Ct. 344, 2 L.Ed.2d 274 (1958).

In *Daigle*, the jury was instructed that it could not return verdicts of guilty as to both larceny and embezzlement. 149 F.Supp. at 414. Despite the admonition, the jury returned dual guilty verdicts. The court then directed a verdict of acquittal on one of the counts. Responding to the argument that this gave the trial court power to choose between the verdicts, the court noted that the defendant was acquitted of the more severe crime and, therefore, was not prejudiced. *Id.*

849 F.2d 332, 335 (8th Cir.1988), citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Wajda*, 810 F.2d 754, 761 (8th Cir.1987), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

■ For the reasons hereafter given, the Court concludes that the evidence at trial is insufficient to support a finding that defendant is an Indian.

■ In *St. Cloud v. United States*, 702 F.Supp. 1456 (D.S.D.1988), this Court adopted a two-part test to be used when trying to determine if a person is an Indian for criminal jurisdictional purposes.[5] The first part of the test is whether the person has some Indian blood; the second part looks to whether the person is recognized as an Indian. *Id.* at 1460.

At the trial it was shown that the defendant was 7/32 Indian. His father was 7/16 Indian and his mother was not an Indian. Therefore, the first criteria, that the defendant has some Indian blood, was established.[6]

The second part of the test, whether the person is recognized as an Indian, involves an evaluation of several different factors. *Id.* at 1461. The most important factor is whether the person is enrolled in a tribe.[7] The defendant's father was an enrolled member of the Oglala Sioux Tribe on the Pine Ridge Reservation. Testimony and documents presented at the trial showed that, although the defendant was reg-

istered in the Pine Ridge Reservation for purposes of its census figures, he was not an enrolled member. A Pine Ridge official did testify that since the defendant's father was an enrolled member, the defendant would be eligible to apply for enrollment. However, on cross examination the witness admitted that even though the defendant could apply, there was no guarantee that the enrollment board would admit him. Moreover, the fact that the defendant may be eligible for enrollment is not really a consideration under the test used in *St. Cloud*. The test was whether the person was enrolled and had, in fact, been receiving government assistance. Thus, the first and most critical factor of whether the defendant is recognized as an Indian was not met.

The second factor is whether the government has, either formally or informally, provided the person with assistance reserved only to Indians. *Id.* at 1461–62. The defendant was raised in Sioux City, Iowa and apparently received no assistance from the government based on his Indian blood during his childhood. He testified that one of his relatives was told that it would be difficult for him to be enrolled at Pine Ridge. The lack of enrollment meant that the defendant received minimal government assistance. The only two instances where the defendant received any assistance were apparently when he once obtained some type of benefits at the age of nineteen,[8] and when he received medical

---

**5.** The two-part test was based on *United States v. Rogers*, 45 U.S. (4 How.) 567, 11 L.Ed. 1105 (1846). This test was recognized by the Eighth Circuit in *United States v. Dodge*, 538 F.2d 770, 786 (8th Cir.1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 547 (1977). The Court in *Dodge* concluded that the two defendants were Indians. The Court noted that one defendant was an enrolled member of a tribe and the other defendant had previously been an enrolled member and had applied to become an enrolled member. In contrast, the defendant in the present case has never been an enrolled member of any tribe and has never applied to become an enrolled member.

**6.** The Eighth Circuit has found that one-eighth to one-fourth blood was sufficient to be enrolled as a member and entitled to benefits. *Sully v. United States*, 195 F. 113 (8th Cir.1912). Al-

though this case did not concern criminal jurisdiction, the Eighth Circuit did cite to the case in its decision in *Dodge* which discussed whether the defendants were Indians for jurisdictional purposes under § 1153. *Dodge*, 538 F.2d at 786.

**7.** Although important, this factor is not essential. *United States v. Broncheau*, 597 F.2d 1260, 1262–63 (9th Cir.1979), *cert. denied*, 444 U.S. 859, 100 S.Ct. 123, 62 L.Ed.2d 80 (1979). In *Broncheau*, the Ninth Circuit stated that "[e]nrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative." *Id.* at 1263.

**8.** The defendant testified that he believed he received some type of assistance because a relative gave him some money when he was nineteen.

treatment from a clinic in 1973.[9] No evidence was introduced that the defendant received any other type of assistance except for these two isolated examples. The defendant stated that he applied for Indian educational benefits on two separate occasions but was turned down.

The final two factors are whether the person enjoys the benefits of tribal affiliation and whether he is socially recognized as an Indian because he lives on the reservation and participates in Indian social life. *Id.* at 1462. Additional evidence received at the trial with regard to these remaining two factors further supports this Court's conclusion that the defendant is not an Indian as defined by *St. Cloud.* The defendant testified that he lived in Norris, South Dakota for five to six years beginning in 1971 but since then he has lived in many different cities, and has made periodic visits back to South Dakota. Defendant worked in Denver before returning for a visit on December 31, 1989. These sporadic visits do not rise to the level of enjoying "the benefits of tribal affiliation" or "living on the reservation and participating in Indian social life." *Id.* at 1461.

Even when viewed in the light most favorable to the government, this evidence was not substantial enough to support a verdict of guilty as to Count II which required that the defendant be an Indian.[10] Therefore, the defendant's motion to set aside the verdict of guilty and enter a judgment of acquittal as to Count II is granted.

### III.

■ Remaining for consideration is defendant's claim that the crime did not occur in Indian Country and thus, the Court was without jurisdiction. *See* 18 U.S.C. §§ 1152 and 1153. After a review of all the evidence presented at the trial, the Court finds that there was substantial evidence that the crime occurred in Indian country.

■ The term "Indian country," as defined in 18 U.S.C. § 1151, includes "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state." This Court, in *United States v. Mound,* 477 F.Supp. 156 (D.S.D.1979), identified four factors to be used when deciding if a community is a dependent Indian community. These four factors can be summarized as follows:

1. Whether the United States has retained title to the lands which it permits the Indians to occupy and whether the United States has authority to enact regulations and protective laws respecting the territory;

2. The nature of the area in question, the relationship of the inhabitants of the area to the Indian tribes and to the federal government, and the established practice of government agencies toward the area;

3. Whether there is an element of cohesiveness manifested either by economic pursuits in the area, common interests, or needs of the inhabitants as supplied by that locality;

4. Whether such lands have been set apart for the use, occupancy and protection of dependent Indian peoples.

*Id.* at 158–59.

Evidence at trial showed that the crime occurred in a home located in a community called Blackpipe Housing. With regard to the first factor, which concerns title to the land, the real estate manager for the Bureau of Indian Affairs testified that the land on which Blackpipe Housing is located is held by the United States in trust for the Rosebud Sioux Tribe.

In addition, there was substantial evidence presented in support of the other three factors. The executive director of the Rosebud Housing Authority stated that

---

**9.** The medical records supervisor stated that a person is entitled to medical services if he is an enrolled member or if one of his parents is an enrolled member of a recognized tribe.

**10.** The government offered to stipulate that the defendant was not an Indian, but the defendant refused.

the houses in the Blackpipe community were built with federal funds and that the land is leased by the housing authority from the Rosebud Sioux Tribe. Preferences for leasing the houses are given to tribal members with the result that 99% of the residents are Native American. This testimony demonstrated that the land was set apart for the use of the Indian people.

Moreover, a council representative for the Rosebud Sioux Tribe testified that most of the residents of Blackpipe Housing receive general assistance checks through the tribal government, a community health representative comes from Rosebud twice a week, and law enforcement services are provided by the Bureau of Indian Affairs. The Rosebud Water and Sewer Commission administers the water and sewer systems and the Rosebud Housing Authority maintains the area. This evidence shows the cohesiveness of the area and illustrates the close relationship between Blackpipe Housing and the Rosebud Sioux Tribe.

Based upon the extensive evidence presented at the trial which showed that Blackpipe Housing was a dependent Indian community, the defendant's motion for acquittal or a new trial based on his claim that the crime did not occur in Indian country is denied.

## IV.

■ Based on the acquittal of the defendant on Count II, jurisdiction is then found under § 1152 as charged in Count I of the indictment[11] and the defendant's motion for acquittal on Count I is denied. The acquittal of the defendant on Count II effectively eliminates any possible prejudice to the defendant based on the jury's verdict of guilty as to both Counts I and II.[12] Accordingly, the defendant's motion for a new trial is also denied.

**11.** Section 1152 applies to crimes committed by non–Indians against Indians in Indian country. *United States v. John,* 587 F.2d 683 (5th Cir. 1979), *cert. denied,* 441 U.S. 925, 99 S.Ct. 2036, 60 L.Ed.2d 399 (1979).

Pursuant to Rule 29(d) of the Rules of Criminal Procedure, when a court grants a motion for acquittal after a verdict of guilty, the Court must then "determine whether any motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination. If the motion for a new trial is granted conditionally, the order thereon does not affect the finality of the judgment." This Court finds that the defendant would not be entitled to a new trial if the acquittal on Count II is reversed because the acquittal was based on jurisdictional grounds, not on account of any error during the trial.