# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOEL EUSEVIO DAVIS,

Defendant-Appellant.

FOR PUBLICATION
July 13, 2017
9:10 a.m.

No. 332081
Wayne Circuit Court
LC No. 15-005481-01-FH

Before: GLEICHER, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of aggravated domestic assault (second offense), MCL 750.81a(3), and assault with intent to do great bodily harm less than murder, MCL 750.84. Defendant raises a meritless challenge to the admission of certain photographic evidence. He also raises a legitimate concern over his convictions for two offenses with mutually exclusive provisions. We vacate defendant's domestic assault conviction but otherwise affirm.

## I. BACKGROUND

Defendant and SS were romantically involved and lived together in Dearborn Heights. At around 4:00 a.m. on June 10, 2015, defendant woke SS to ask her where their ashtray was. Defendant took offense at SS's displeasure over being roused. He pulled SS to the floor by her shirt collar and struck her about the face with his fist and open hand. SS begged defendant to stop, but he told her to "shut up" and threatened, "you're gonna make me have to kill you."

Defendant eventually terminated the beating and SS escaped to the bathroom. She rinsed blood from her mouth, but could not examine her injuries because her eyes were swollen shut. In the meantime, defendant took SS's truck and left the house. He also carried away SS's purse containing her keys, phone, and $400 cash. Defendant did not stay gone long, however. When he pulled back into the driveway, SS fled the home through a back door. She ran to a neighbor's house and called 911.

The responding officer described SS's face as "almost unrecognizable" due to significant swelling, bruising, and bleeding. Defendant had left the couple's home again and could not be immediately arrested. SS's mother took her to the hospital, where she underwent X-rays and a CAT scan. A doctor prescribed pain medication and placed SS in a neck brace. Someone at the hospital took photographs to document her injuries.

-1-

The following day, SS and her mother drove past the house and saw her vehicle parked in the driveway. They summoned the police, who forcibly entered and arrested defendant. The prosecution charged defendant with larceny and theft of SS's vehicle, but the jury acquitted him of those charges. The jury convicted defendant of aggravated domestic assault and assault with intent to do great bodily harm less than murder (AWIGBH).

## II. PHOTOGRAPHIC EVIDENCE

Defendant first contends that the trial court should not have admitted two photographs of SS lying in a hospital bed with a severely bruised face and wearing a neck brace. Defendant contends that although these photographs otherwise accurately depict SS's condition, they were overly prejudicial because SS did not actually suffer a spinal injury requiring a neck brace.

We review for an abuse of discretion a trial court's decision to admit evidence, including photographs. *People v Mills*, 450 Mich 61, 76; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Evidence is generally admissible if it is relevant, i.e., has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; MRE 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. The "[g]ruesomeness" of a photograph standing alone is insufficient to merit its exclusion. The proper question is "whether the probative value of the photographs is substantially outweighed by unfair prejudice." *Mills*, 450 Mich at 76.

The photographs of SS's bruised and swollen face were highly relevant and probative to establish an essential element of aggravated domestic assault—a "serious or aggravated injury." MCL 750.81a(1). The nature of SS's injuries also tended to establish that defendant acted with the intent to do great bodily harm as required by MCL 750.81(1)(a)—with the "intent to do serious injury of an aggravated nature." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). Accordingly, this evidence was admissible under MRE 402.

And the photographs were not so prejudicial as to warrant exclusion under MRE 403. All relevant evidence "is prejudicial to some extent." *Mills*, 450 Mich at 75 (quotation marks omitted). In *Mills*, the Michigan Supreme Court ruled that photographs graphically depicting a burn victim were relevant, probative and not overly prejudicial where "[t]he photographs [were] accurate factual representations of the injuries suffered by [the victim] and the harm the defendants caused her." *Id.* at 77. Here, the nature and placement of SS's bruises and lacerations corroborated her testimony about the assault and depicted the seriousness of her injuries. Even if the neck brace was "precautionary" only as argued by defendant, this precaution was required by defendant's actions. It was part and parcel of the medical treatment SS received for injuries sustained after defendant repeatedly punched her in the face. We discern no error in the admission of these photographs.

## III. MUTUALLY EXCLUSIVE VERDICTS

Next, defendant argues that his convictions for both AWIGBH and aggravated domestic assault violated his right to be free from multiple punishments for the same offense under double jeopardy principles. We agree that defendant was improperly convicted for a single act under two statutes with contradictory and mutually exclusive provisions. However, the issue is more nuanced than expressed by the defense and double jeopardy is not the proper initial focus.

The jury convicted defendant of aggravated domestic assault, which is proscribed, in relevant part, by MCL 750.81a:

> (2) Except as provided in subsection (3), an individual who assaults . . . an individual with whom he or she has or has had a dating relationship . . . without a weapon and inflicts serious or aggravated injury upon that individual *without intending to commit murder or to inflict great bodily harm less than murder* is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.

> (3) An individual who commits an assault and battery in violation of subsection (2), and who has 1 or more previous convictions for assaulting or assaulting and battering his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of the same household, in violation of any of the following, is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $5,000.00, or both . . . . [Emphasis added.]

The jury also convicted defendant of violating MCL 750.84(1)(a), which makes it a 10-year felony to "[a]ssault[] another person *with intent to do great bodily harm, less than the crime of murder.*" (Emphasis added.)

Clearly, these two offenses are mutually exclusive from a legislative standpoint. One requires the defendant to act with the specific intent to do great bodily harm less than murder, *Brown*, 267 Mich App at 147; the other is committed without intent to do great bodily harm less than murder. We must give effect to the plain and unambiguous language selected by the Legislature. See *People v Miller*, 498 Mich 13, 22-23; 869 NW2d 204 (2015). And the plain language of the statutes reveals that a defendant cannot violate both statutes with one act as he or she cannot both intend and yet *not* intend to do great bodily harm less than murder.

But may this Court grant relief? As a general rule, juries are permitted to reach inconsistent verdicts and appellate courts may not interfere with their judgments. The deliberative process of the jury is secret and no court is privy to the rationale leading to inconsistent verdicts. Unlike a court's judgment following a bench trial, the jury is held to no rules of logic and is not required to explain its ruling. The verdicts may be the result of jury compromise or the jury's inclination to be lenient. See *Dunn v United States*, 284 US 390, 393-394; 52 S Ct 189; 76 L Ed 356 (1931); *People v Vaughn*, 409 Mich 463, 465-466; 295 NW2d 354 (1980).

This case does not fit the mold of inconsistent-verdict jurisprudence. Precedent regarding the jury's right to reach inconsistent verdicts focuses on situations in which acquittal on one charge renders it seemingly impossible for the jury to have found the existence of all elements of the charge on which it acquits. For example, appellate review is not permitted when the jury acquits a defendant of an underlying felony charge and yet convicts the defendant of felony-firearm or felony-murder. See *People v Goss*, 446 Mich 587; 521 NW2d 312 (1994); *People v Lewis*, 415 Mich 443; 330 NW2d 16 (1981). In these circumstances, it is easily surmised that the jury did its job but acted leniently.

This was just the case in *United States v Powell*, 469 US 57, 59-60; 105 S Ct 471; 83 L Ed 2d 461 (1984), in which a jury convicted the defendant of facilitating the sale of narcotics by phone but acquitted her of conspiring to possess with intent to deliver those same narcotics. Relying on *Dunn* and its progeny, the Supreme Court reasoned:

> [W]here truly inconsistent verdicts have been reached, "[the] most that can be said . . . is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." *Dunn*, [284 US] at 393. The rule that the defendant may not upset such a verdict embodies a prudent acknowledgment of a number of factors. First, as the above quote suggests, inconsistent verdicts—even verdicts that acquit on a predicate offense while convicting on the compound offense—should not necessarily be interpreted as a windfall to the Government at the defendant's expense. It is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense. But in such situations the Government has no recourse if it wishes to correct the jury's error; the Government is precluded from appealing or otherwise upsetting such an acquittal by the Constitution's Double Jeopardy Clause. . . .
>
> Inconsistent verdicts therefore present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course. . . . [N]othing in the Constitution would require such a protection. . . . For us, the possibility that the inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest. This possibility is a premise of *Dunn*'s alternative rationale—that such inconsistencies often are a product of jury lenity. Thus, *Dunn* has been explained by both courts and commentators as a recognition of the jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch. . . . [*Powell*, 469 US at 64-66.]

"[T]he best course to take," the *Powell* Court concluded, "is simply to insulate jury verdicts from review on this ground." *Id*. at 69.

As noted, the issue now before this Court is not a typical inconsistent-verdict matter. Rather, it fits within an exception to this rule as "a situation 'where a guilty verdict on one count necessarily excludes a finding of guilt on another,' " rendering the two "mutually exclusive." *United States v Randolph*, 794 F3d 602, 610-611 (CA 6, 2015). Indeed, the United States Supreme Court specifically recognized this scenario in *Powell*, 469 US at 69 n 8, noting:

> Nothing in this opinion is intended to decide the proper resolution of a situation where a defendant is convicted of two crimes, where a guilty verdict on one count logically excludes a finding of guilt on the other. Cf. *United States v Daigle*, 149 F Supp 409 (DC), aff'd per curiam, 101 US App DC 286; 248 F2d 608 (1957). . . .

In *Daigle*, 149 F Supp at 411, the jury convicted the defendant of embezzlement and grand larceny of certain funds owned by "Mrs. Thrasher," despite the trial court's instruction to only reach the larceny charge if it found the defendant not guilty of embezzlement. The offenses were mutually exclusive because the embezzlement statute proscribed the taking of another's funds that were lawfully in the defendant's possession while the larceny statute related to unlawfully taking funds from another's possession. *Id*. at 414. The guilty verdict on the embezzlement charge required a finding that the defendant initially lawfully possessed the funds; this finding "negative[d]" a "fact essential" to the second convicted offense—that the defendant initially unlawfully possessed the funds. *Id*.

Our sister states have reached the same conclusion in similar circumstances. In *Dumas v State*, 266 Ga 797, 799; 471 SE2d 508 (1996), for example, the Georgia Supreme Court held that a jury could not convict a defendant of two offenses "that not only were inconsistent, but also were *mutually exclusive*." (Emphasis in original.) Dumas was convicted by a jury of "malice murder," which required "malice aforethought," and vehicular homicide, which was statutorily defined as a killing "without malice aforethought." *Id*. at 800. The Georgia Supreme Court held, "in its first verdict, the jury in this case convicted Dumas of killing with malice aforethought and without malice aforethought; of killing both with *and* without an intention to do so. Obviously, the two verdicts were mutually exclusive. . . ." *Id*. (emphasis in original).

The Tennessee Court of Criminal Appeals found unsustainable mutually exclusive guilty verdicts on reckless homicide and second-degree murder. To enter such verdicts, the appellate court noted, "the jury would have had to find that the Defendant simultaneously acted both knowingly and recklessly with regard to the same act and the same result, i.e., the death of the victim." *State v Davis*, 2013 Tenn Crim App LEXIS 431, p 23 (2013).

Here, the statutory language clearly presents two mutually exclusive offenses; one cannot assault another with intent to do great bodily harm less than murder and at the same time assault another without the intent to do great bodily harm less than murder. However, a unique wrinkle exists in this case because the jury did not actually make contradictory findings in reaching two mutually exclusive guilty verdicts. The trial court did not instruct the jury that in order to convict defendant of aggravated domestic assault it had to find that defendant did not act with intent to great bodily harm. The only intent mentioned by the court was "either to commit a battery, or to make [SS] reasonably fear an immediate battery."

The trial court did not instruct the jury regarding the lack of intent to do great bodily harm necessary to meet the statutory definition of aggravated domestic assault because the Michigan Supreme Court has directed that such provisions are not elements of an offense. *People v Doss*, 406 Mich 90, 99; 276 NW2d 9 (1979). The defendant in *Doss*, 406 Mich at 97, was charged with manslaughter pursuant to MCL 750.239, which defined the offense as causing death by certain acts done "intentionally but without malice." " '[W]ithout malice' is the absence of an element." *Id*. at 99. Accordingly, the prosecution was not required to establish the lack of malice beyond a reasonable doubt. " 'Elements are, by definition, positive. A negative element of a crime is a contradiction in terms.' " *Id*., quoting *People v Chamblis*, 395 Mich 408, 424; 236 NW2d 473 (1975) (emphasis omitted). Statutory language describing such negatives is a hallmark of lesser included offenses. The lack of malice cited in the manslaughter statute rendered the offense a cognate lesser offense of murder, the Court held. *Doss*, 406 Mich at 99, quoting *Chamblis*, 395 Mich at 424.

MCL 750.81a includes a negative, just like the manslaughter statute. The lack of intent to commit great bodily harm less than murder is not an affirmative element. The prosecution was not required to prove this absence of intent and the trial court was not required to instruct the jury in this regard. This does not nullify the error of convicting defendant of mutually exclusive offenses, however.

The error in this case stems from two sources. First, the prosecution should not have independently charged defendant under two statutes with irreconcilable provisions stemming from one assault. The prosecution should have levied the charges as alternative grounds for conviction. Second, after the jury reached mutually exclusive verdicts, the trial court should have either reinstructed the jury to elect conviction under one or the other or vacated one of the convictions.

We need not remand to remedy the error. The jury affirmatively found that defendant acted with the intent to do great bodily less than murder when it convicted defendant of AWIGBH. As the court did not inform the jury that a lack of such intent accompanied the aggravated domestic assault charge, the jury never found a lack of intent on defendant's part. We therefore know which charge is supportable by jury-found facts and can affirm defendant's AWIGBH conviction. As an improperly entered mutually exclusive verdict, we vacate defendant's conviction and sentence for aggravated domestic assault.

We affirm in part and vacate in part.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro